# United States Court of Appeals for the Federal Circuit

01-1327, -1341

SNR ROULEMENTS,

Plaintiff-Appellee,

and

SKF USA INC., SKF FRANCE S.A., and SARMA,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellant,

and

THE TORRINGTON COMPANY
(now known as Timken U.S. Corporation),

Defendant-Appellant.

Max F. Schutzman, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt LLP, of New York, New York, argued for plaintiff-appellee SNR Roulements. With him on the brief were Bruce M. Mitchell and Adam M. Dambrov. Of counsel were Jeffrey S. Grimson and Mark E. Pardo, of Washington, DC.

Stephen C. Tosini, Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellant United States. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; and Michael D. Panzera, Attorney. Of counsel on the brief was Philip Curtin, Attorney, Office of Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC. Of counsel were John D. McInerney, Berniece A. Browne, David R. Mason, and John F. Koeppen, United States Department of Commerce.

Geert M. De Prest, Stewart and Stewart, of Washington, DC, argued for defendant-appellant The Torrington Company, etc. With him on the brief were Terence P. Stewart, William A. Fennell, and Lane S. Hurewitz. Of counsel was Wesley K. Caine.

Appealed from: United States Court of International Trade

Senior Judge Nicholas Tsoucalas

# United States Court of Appeals for the Federal Circuit

01-1327, -1341

SNR ROULEMENTS,

Plaintiff-Appellee,

and

SKF USA INC., SKF FRANCE S.A., and SARMA,

Plaintiffs,

v.

UNITED STATES,

Defendant-Appellant,

and

THE TORRINGTON COMPANY
(now known as Timken U.S. Corporation),

Defendant-Appellant.

_____

DECIDED:  April 6, 2005

_____

Before CLEVENGER, <u>Circuit Judge</u>, FRIEDMAN, <u>Senior Circuit Judge</u>, and RADER, <u>Circuit Judge</u>.

CLEVENGER, <u>Circuit Judge</u>.

The United States and The Torrington Company ("Torrington") appeal the decision of the United States Court of International Trade that the Department of Commerce ("Commerce") is statutorily required to include imputed credit and inventory

carrying costs in "total expenses" when those costs are included in "total United States expenses" for the purpose of calculating constructed export price profit.[1]  See SNR Roulements v. United States, 118 F. Supp. 2d 1333, 1340-41 (Ct. Int'l Trade 2000).  Because the Court of International Trade erroneously interpreted 19 U.S.C. § 1677a as not permitting Commerce to use actual expenses instead of imputed expenses to account for credit and inventory carrying costs when determining "total expenses," we reverse its decision and remand the case with the instruction that Plaintiffs be provided an opportunity to make a showing that their dumping margins were wrongly determined because Commerce's use of actual expenses did not account for U.S. credit and inventory carrying costs in the calculation of total expenses.

I

"Dumping" refers to the sale or likely sale of goods at less than fair value. 19 U.S.C. § 1677 (2000).  When reviewing or determining antidumping duties, the administering authority is required to determine "(i) the normal value and export price (or constructed export price) of each entry of the subject merchandise, and (ii) the dumping margin for each such entry."  19 U.S.C. § 1675 (2000).  Constructed export price ("CEP") refers to the price, as adjusted pursuant to section 1677a, at which the subject merchandise is sold in the United States to a buyer unaffiliated with the producer or exporter.  The "dumping margin" refers to the amount by which the normal value exceeds export price or CEP.  § 1677.

---

[1]  This is a companion case to a consolidated appeal from three other decisions of the Court of International Trade.  See FAG Kugelfischer v. United States, 131 F. Supp. 2d 104 (Ct. Int'l Trade 2001); NTN Bearing Corp. of Am. v. United States, 155 F. Supp. 2d 715 (Ct. Int'l Trade 2001); FAG Italia v. United States, 24 C.I.T. 1311 (2000) (unpublished).

01-1327, -1341                          2

Section 1677a authorizes several adjustments to the price that gives rise to CEP. One adjustment involves reducing the price by the profit ("CEP profit") allocated to the "total United States expenses." 19 U.S.C. § 1677a(d)(3) (2000). Total United States expenses include the following:

> (1) the amount of any of the following expenses generally incurred by or for the account of the producer or exporter, or the affiliated seller in the United States, in selling the subject merchandise (or subject merchandise to which value has been added)--
> > (A) commissions for selling the subject merchandise in the United States;
> > (B) expenses that result from, and bear a direct relationship to, the sale, such as credit expenses, guarantees and warranties;
> > (C) any selling expenses that the seller pays on behalf of the purchaser; and
> > (D) any selling expenses not deducted under subparagraph (A), (B), or (C);
> (2) the cost of any further manufacture or assembly (including additional material and labor), except in circumstances described in subsection (e) of this section . . . .

§ 1677a(d). CEP profit is calculated by multiplying the "total actual profit" by the "applicable percentage," which is obtained by "dividing the total United States expenses by the total expenses." § 1677a(f). Total expenses

> means all expenses in the first of the following categories which applies and which are incurred by or on behalf of the foreign producer and foreign exporter of the subject merchandise and by or on behalf of the United States seller affiliated with the producer or exporter with respect to the production and sale of such merchandise.

§ 1677a(f)(2)(C). The applicable category for purposes of this appeal further defines total expenses as those

> incurred with respect to the subject merchandise sold in the United States and the foreign like product sold in the exporting country if such expenses were requested by the administering authority for the purpose of establishing normal value and constructed export price.

§ 1677a(f)(2)(C)(i).

II

In the seventh administrative review of the antidumping duty order on antifriction bearings, Commerce determined that Plaintiffs had made sales at less than fair value. See Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore, Sweden and the United Kingdom; Final Results of Antidumping Duty Administrative Reviews, 62 Fed. Reg. 54,043 (Oct. 17, 1997), as amended, Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France, Germany, Italy, Japan, Romania, Singapore[,] Sweden and the United Kingdom; Amended Final Results of Antidumping Duty Administrative Reviews, 62 Fed. Reg. 61,963 (Nov. 20, 1997).

Plaintiffs sought judicial review of Commerce's final decision in the Court of International Trade contending, inter alia, that Commerce unlawfully calculated CEP profit because Commerce included an imputed amount for credit and inventory carrying costs when calculating total United States expenses, but relied on actual amounts, to the exclusion of an imputed amount, when calculating total expenses. See SNR Roulements v. United States, 118 F. Supp. 2d 1333, 1339-40 (Ct. Int'l Trade 2000). In particular, Plaintiffs contended that 19 U.S.C. § 1677a unambiguously requires that an imputed amount be used in the calculation of total expenses when an imputed amount is used in the calculation of total United States expenses. Relying for support on Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837 (1984), the Court of International Trade interpreted section 1677a as unambiguously establishing that total United States expenses was a subset of total expenses and that therefore: "Commerce must include imputed credit and inventory carrying costs in 'total

01-1327, -1341                    4

expenses' when they are included in 'total United States expenses.'" <u>SNR</u>, 118 F. Supp. 2d at 1340-41.

The Court of International Trade remanded the case to Commerce, ordering that it redetermine Plaintiff's margin in accordance with the court's construction of the statute. <u>Id.</u> On remand, Commerce complied, but objected to the Court of International Trade's understanding of section 1677a. Commerce explained:

> [S]ince the cost of the U.S. and home-market merchandise includes the actual booked interest expenses, it is not appropriate to include imputed interest amounts as well in total expenses. Doing so double-counts this expense to a certain extent and overstates the cost attributed to sales of this merchandise. This overstatement of cost understates the ratio of U.S. selling expenses to total expenses and consequently understates the amount of actual profit allocated to selling, distribution, and further-manufacturing activities in the United States.

<u>Final Results of Redetermination Pursuant to Court Remand</u> (Oct. 13, 2000), <u>available at</u> http://www.ia.ita.doc.gov/remands/00-131.htm.

The Court of International Trade affirmed the remand results, <u>see</u> <u>SNR Roulements v. United States</u>, slip op. 01-17 (Ct. Int'l Trade Feb. 23, 2001), and the government and Torrington appeal. Our jurisdiction lies in 28 U.S.C. § 1295(a)(5) (2000). When reviewing the Court of International Trade's judgment concerning a final determination of Commerce, we reapply that court's standard of review upholding a determination unless it is unsupported by substantial evidence or otherwise not in accordance with law. <u>See</u> <u>Micron Tech., Inc. v. United States</u>, 117 F.3d 1386, 1392-93 (Fed. Cir. 1997).

III

The issue in this case is whether it is lawful for Commerce to account for credit and inventory carrying costs with an imputed expense when calculating total United

States expenses and to account for the same costs with the presumption that they are embedded in a respondent's actual expenses when calculating total expenses. Because section 1677a does not unambiguously address the issue, we hold that Commerce may account for credit and inventory carrying costs using imputed expenses in one instance and using actual expenses in the other provided that Commerce affords a respondent who so desires the opportunity to make a showing that the amount of imputed expenses is not accurately reflected or embedded in its actual expenses.

The parties contend that the analysis set forth in Chevron controls the outcome of this case. Under that analysis, when a court reviews an agency's interpretation of a statute the agency administers it applies a two-step analytical paradigm. 467 U.S. at 842-43. First, a court considers whether Congress has directly spoken to the precise question at issue. If so, all that remains is for a court to ensure that the agency gives effect to the unambiguously expressed intent of Congress. Second, however, if Congress has not directly spoken to the precise question at issue, making the statute silent or ambiguous with respect to the specific issue, a court considers whether the agency's interpretation is a permissible construction of the statue. Id. The parties here divide on whether this case resolves at step one of the Chevron analysis.

Appellants assert that the language of section 1677a does not show that Congress directly addressed the issue of the manner in which Commerce may account for credit and inventory carrying costs. Therefore, they argue, the question for this court is whether Commerce's election to use imputed expenses when calculating total United States expenses and actual expenses when calculating total expenses reflects a permissible construction of section 1677a. According to the government, this

construction is permissible because (1) it avoids double counting of interest expenses and (2) Commerce interprets the statute to require that actual expenses be used to calculate total expenses.

Appellees deny that we have authority to consider whether Commerce's interpretation is permissible because, they argue, when Congress drafted section 1677a it made crystal clear that all expenses "incurred with respect to the subject merchandise sold in the United States" are to be included in the calculation of total expenses. Thus, Appellees contend, because U.S. credit and inventory carrying costs are literally "expenses," if an imputed number is used to account for these expenses when calculating total United States expenses, Congress has unambiguously stated that Commerce must add that number to the calculation of total expenses even if some or all U.S. credit and inventory carrying costs are already accounted for in a respondent's actual expenses.

Appellees' contention that in section 1677a Congress has unambiguously and directly spoken to the precise issue in this case is implausible. The statute describes CEP profit as the product of total actual profit multiplied by the applicable percentage. § 1677a(f)(1). The applicable percentage is calculated by "dividing the total United States expenses by the total expenses." § 1677a(f)(2)(A). Total United States expenses are defined as those expenses enumerated in section 1677a(d)(1) and (2). § 1677a(f)(2)(B). Finally, total expenses in this case include "expenses incurred with respect to the subject merchandise sold in the United States." § 1677a(f)(2)(C)(i). These statutory subsections contain no mention of what manner or form of accounting Commerce is required to use when calculating total United States expenses and total

expenses. They also do not state or clearly indicate that Commerce may or may not impute expenses in some calculations and rely on actual expenses in others. Because nothing in the language addresses the question of whether Commerce must use an imputed value when calculating total expenses if it has used an imputed value in calculating total United States expenses, there is no basis to conclude that Congress has provided clear instructions on the issue. See Torrington Co. v. United States, 68 F.3d 1347, 1350-51 (Fed. Cir. 1995). Accordingly, the remaining question is whether the agency's interpretation of the section is permissible.

Beyond their arguments directed to the first step of the Chevron analysis, Appellees do not seriously dispute that the government's interpretation of section 1677a is permissible. Our precedent indicates that in antidumping cases, we accord substantial deference to Commerce's statutory interpretation, see 68 F.3d at 1351, and this record does not show that Commerce's interpretation is unlawful. In this case, we do not understand the government to argue that Commerce views expenses pertaining to U.S. credit and inventory carrying costs as outside the category of expenses incurred with respect to the subject merchandise sold in the United States. In addition, there is no indication that Commerce interprets section 1677a to permit the exclusion of expenses pertaining to U.S. credit and inventory carrying costs from its calculation of total expenses. Instead, according to the government and Torrington, when Commerce calculates total expenses it does so under the presumption that using actual expenses in the calculation produces a result that takes into account U.S. credit and inventory carrying costs that were imputed to total United States expenses.

We note, however, that neither the government nor Torrington is unequivocal in this assertion. For instance, the government's brief asserts that "the respondent's interest expenses are included in its actual booked expenses, and these interest expenses already largely account for imputed expenses." Torrington's brief asserts that a respondent's audited financial records "presumptively include all financial expenses, including such financial expenses as might be associated with extending credit to U.S. or home market customers, or in maintaining inventory before sale."

Antidumping laws intend to calculate antidumping duties on a fair and equitable basis. See U.S. Steel Group v. United States, 225 F.3d 1284, 1290 (Fed. Cir. 2000) (citing Koyo Seiko Co. v. United States, 36 F.3d 1565, 1573 (Fed. Cir. 1994)). Assuming there are cases where actual expenses do not take into account U.S. credit and inventory carrying costs, it is at least possible that in such cases a respondent's dumping margins are not calculated on a fair and equitable basis. The reason is that the additive increase to the numerator of the applicable percentage fraction may not be adequately reflected in the denominator of the fraction. This may impermissibly distort the CEP profit calculation, and accordingly, the dumping margin.

In this case, the question is whether a respondent is entitled to an adjustment where it can show that expenses imputed to U.S. credit and inventory carrying costs are not reflected or embedded in its actual expenses. We understand the government to concede that an adjustment may be appropriate under normal accounting principles when a respondent can show that CEP profit is unfairly distorted by Commerce's practice of relying on actual amounts for total expenses. In this case, there is no dispute that Plaintiffs-Appellees were not afforded an opportunity to make a showing

that Commerce's use of actual expenses did not account for U.S. credit and inventory carrying costs for which imputed values were used in the total United States expenses calculation. Because in appropriate circumstances such a showing may support an adjustment to CEP profit, we remand the case with the instruction that Plaintiffs be provided an opportunity to make a showing that their dumping margins were wrongly determined because Commerce's use of actual expenses did not account for U.S. credit and inventory carrying costs in the calculation of total expenses.

IV

For the reasons stated above, we reverse the Court of International Trade's interpretation of section 1677a and remand the case with the instruction that Plaintiffs be provided an opportunity to make a showing that their dumping margins were wrongly determined because Commerce's use of actual expenses did not account for U.S. credit and inventory carrying costs in the calculation of total expenses.

COSTS

No costs.

REVERSE AND REMAND