# United States Court of Appeals for the Federal Circuit

---

**FINE FURNITURE (SHANGHAI) LIMITED, GREAT WOOD (TONGHUA) LTD., AND FINE FURNITURE PLANTATION (SHISHOU) LTD.,**
*Plaintiff-Appellant,*

AND

**BAROQUE TIMBER INDUSTRIES (ZHONGSHAN) CO., LTD., RIVERSIDE PLYWOOD CORPORATION, SAMLING ELEGANT LIVING TRADING (LABUAN) LIMITED, SAMLING GLOBAL USA, INC., SAMLING RIVERSIDE CO., LTD., SUZHOU TIMES FLOORING CO., LTD., SHANGHAI ESWELL TIMBER CO., LTD., SHANGHAI LAIRUNDE WOOD CO., LTD., SHANGHAI NEW SIHE WOOD CO., LTD., SHANGHAI SHENLIN CORPORATION, VICWOOD INDUSTRY (SUZHOU) CO., LTD., XUZHOU SHENGHE WOOD CO., LTD., AND A&W (SHANGHAI) WOODS CO., LTD.,**
*Plaintiffs-Appellants,*

AND

**CHANGZHOU HAWD FLOORING CO., LTD., DUNHUA CITY JISEN WOOD INDUSTRY CO., LTD., DUNHUA CITY DEXIN WOOD INDUSTRY CO., LTD., DALIAN HUILONG WOODEN PRODUCTS CO., LTD., KUNSHAN YINGYI-NATURE WOOD INDUSTRY CO., LTD., AND KARLY WOOD PRODUCT LIMITED,**
*Plaintiffs-Appellants,*

**AND**

**HUNCHUN FOREST WOLF INDUSTRY CO., LTD., NANJING MINGLIN WOODEN INDUSTRY CO., LTD., DALIAN PENGHONG FLOOR PRODUCTS CO., LTD., DONGTAI FUAN UNIVERSAL DYNAMICS, LLC, ZHEJIANG FUDELI TIMBER INDUSTRY CO., LTD., FUSONG QIANQIU WOODEN PRODUCT CO., LTD., POWER DEKOR GROUP CO., LTD., JIAFENG WOOD (SUZHOU) CO., LTD., JIANGSU SENMAO BAMBOO AND WOOD INDUSTRY CO., LTD., SHENYANG HAOBAINIAN WOODEN CO., LTD., GUANGZHOU PAN YU KANG DA BOARD CO., LTD., NAKAHIRO JYOU SEI FURNITURE (DALIAN) CO., LTD., YIXING LION-KING TIMBER INDUSTRY CO., LTD., GUANGZHOU PANYU SOUTHERNSTAR CO., LTD., DALIAN KEMIAN WOOD INDUSTRY CO., LTD., FU LIK TIMBER (HK) COMPANY,LTD., PULI TRADING LTD., ZHEJIANG SHIYOU TIMBER CO., LTD., SHANGHAI LIZHONG WOOD PRODUCTS CO., LTD., AND SHENZHENSHI HUANWEI WOODS CO., LTD.,**
*Plaintiffs-Appellants,*

**AND**

**THE BUREAU OF FAIR TRADE FOR IMPORTS & EXPORTS, MINISTRY OF COMMERCE, AND PEOPLES REPUBLIC OF CHINA,**
*Plaintiff,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**AND**

**THE COALITION FOR AMERICAN HARDWOOD PARITY,**
*Defendant.*

————————————

2013-1158, -1172, -1173, -1174

————————————

Appeals from the United States Court of International Trade in No. 11-CV-0533, Chief Judge Donald C. Pogue.

————————————

Decided:  April 23, 2014

————————————

KRISTIN H. MOWRY, Mowry & Grimson, PLLC, of Washington, DC, argued for all plaintiff-appellants.  With her on the brief were JEFFREY S. GRIMSON, JILL A. CRAMER, and SARAH M. WYSS, for Fine Furniture (Shanghai) Limited, et al.  FRANCIS J. SAILER, MARK E. PARDO and ANDREW T. SCHUTZ, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of Washington, DC, for Baroque Timber Industries (Zhongshan) Co., Ltd., et al; GREGORY S. MENEGAZ, DeKieffer & Hogan, of Washington, DC, for Changzhou Hawd Flooring Co., Ltd., et al.; JEFFREY S. NEELEY and STEPHEN W. BROPHY, Barnes, Richardson, & Colburn, LLP, of Washington, DC, for Dalian Kemian Wood Industry Co., Ltd., et al.  Of counsel were JEFFREY KEVIN HORGAN, DeKieffer & Horgan, of Washington, DC, and KAVITA MOHAN, Grunfeld, Desiderio, Lebowitz, Silverman & Klestadt, LLP, of Washington, DC.

ALEXANDER V. SVERDLOV, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-

appellee. With him on the brief were STUART F. DELERY, Acting Assistant Attorney General, and JEANNE E. DAVIDSON, Director. Of counsel was SCOTT D. MCBRIDE, Senior Attorney, Office of the Chief Counsel for Import Administration, United States Department of Commerce, of Washington, DC. Of counsel was JONATHAN M. ZIELINSKI, of Washington, DC.

---

Before NEWMAN, PLAGER, and CHEN, *Circuit Judges.*

PLAGER, *Circuit Judge.*

This is a countervailing duty ("CVD") case under the United States' trade laws. It involves the application of adverse inferences in a CVD investigation when a party fails to provide requested information.

Fine Furniture (Shanghai) Limited, *et al.* (referred to hereafter collectively as "Fine Furniture"), is a producer of hardwood flooring in China, whose flooring material is imported into the United States. In response to a petition by domestic industries, the U.S. Department of Commerce ("Commerce") instituted a CVD investigation of multi-layered wood flooring in China. Commerce selected Fine Furniture as a mandatory respondent in the investigation. After the government of China, the foreign government respondent in the investigation, did not provide requested information, Commerce relied on adverse inferences to find that the government's provision of electricity constituted a specific financial contribution and applied this adverse inference to select the benchmark for determining the existence and amount of benefit.[1]

---

[1] *See Multilayered Wood Flooring From the People's Republic of China,* 76 Fed. Reg. 19,034, 19,036 (Dep't of Commerce Apr. 6, 2011) (*Preliminary Determination*).

The Court of International Trade ("the trial court") determined that Commerce properly utilized adverse inferences to substitute for information controlled by the government of China that was not provided in the course of the investigation. Fine Furniture appeals the judgment of the trial court, alleging that Commerce improperly used adverse inferences against Fine Furniture, a cooperating party, in calculating the CVD rate.

We conclude that, in calculating the CVD rate, Commerce properly applied adverse inferences to determine the CVD levied on the importation. We affirm the judgment of the Court of International Trade.

BACKGROUND

The CVD statute is a remedial measure that provides relief to domestic manufacturers by imposing duties upon imports of comparable foreign products that have the benefit of a subsidy from the foreign government. 19 U.S.C. § 1671(a). The statute mandates that if "the government of a country or any public entity within the territory of a country" is providing a countervailable subsidy with respect to the production or exportation of specific merchandise, "then there shall be imposed upon such merchandise a countervailing duty, in addition to any other duty imposed, equal to the amount of the net countervailable subsidy." *Id.*

Commerce initiated a CVD investigation on multilayered wood flooring from China in November 2010 in response to a petition from domestic producers.[2] Commerce limited its individual examination to those companies accounting for the largest volume of imports, and selected Fine Furniture as a mandatory respondent.

---

[2] *See Multilayered Wood Flooring From the People's Republic of China,* 75 Fed. Reg. 70,719 (Dep't of Commerce Nov. 18, 2010) (*Initiation Notice*).

During the investigation, Commerce sent out questionnaires to analyze an allegation that the government of China subsidized the respondents' electricity costs. Among other things, Commerce sought draft provincial price proposals for 2006 and 2008 for each province in which the mandatory respondents were located.[3] It is undisputed that Fine Furniture provided all of the information requested of it, while the government of China did not.[4]

Commerce determined that the government of China's decision not to provide all of the requested information was a failure to cooperate to the best of its ability. Specifically, Commerce requested information for 2006 and 2008 documenting how electricity rates were determined for each province in which mandatory respondents were located, including draft provincial price proposals. The government of China declined to provide this information, creating a gap in the record.

Accordingly, Commerce applied an adverse inference to find that the Electricity Program provided a financial contribution and was specific to the identified respondents. Commerce also applied adverse inferences to determine the benchmark price for electricity—that is, the price that could have constituted adequate remuneration. Commerce compared the respondents' reported electricity costs with the calculated benchmark price to determine the benefit that respondent companies received under the Electricity Program.[5]

In its petition to the trial court, Fine Furniture challenged Commerce's determination, arguing that Com-

---

[3]  *See Preliminary Determination*, 76 Fed. Reg. at 19,036.

[4]  *See id.*

[5]  76 Fed. Reg. at 64,315.

merce's use of adverse inferences was impermissible because Fine Furniture cooperated in Commerce's investigation. The trial court rejected this argument, finding that Commerce did not apply adverse inferences against Fine Furniture; rather, as the trial court explained, Commerce applied adverse inferences as its method for determining the information requested from, but not provided by, the government of China. *Fine Furniture (Shanghai) Ltd. v. United States*, 865 F. Supp. 2d 1254, 1260-63 (Ct. Int'l Trade 2012). This appeal followed.

We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1295(a)(5).

## DISCUSSION

### 1. Standard of Review

We review decisions of the Court of International Trade evaluating Commerce's final determinations by reapplying the standard that the Court of International Trade applied in reviewing the administrative record. *SNR Roulements v. United States*, 402 F.3d 1358, 1361 (Fed. Cir. 2005); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1393 (Fed. Cir. 1997). Accordingly, we will uphold Commerce's determination unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).

On questions of law, we review Commerce's construction of the trade statute based on the two-pronged framework established by *Chevron, U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Agro Dutch Indus. v. United States*, 508 F.3d 1024, 1029-1030 (Fed. Cir. 2007) (finding that review of Commerce's interpretation of a governing statute should be conducted within the framework established by *Chevron*). The first prong requires the court to determine whether Congress' intent is clear. If it is, the court "must give effect to the

unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

If, however, Congress' intent under the statute regarding the matter at issue is not clear, then the second prong of *Chevron* requires the court to determine whether the agency's interpretation of the statute is a reasonable one. *See id.* at 842-44. The Supreme Court has reaffirmed that Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous." *See United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009). As the Court explained in *Eurodif*, the "whole point of *Chevron* is to leave the discretion provided by the ambiguities of a statute with the implementing agency." *Id.* (internal quotes and citation omitted).

## 2. The Role of Adverse Inferences

Fine Furniture's appeal calls on us to decide whether Commerce properly applied adverse inferences to substitute for information of the purported governmental subsidy not known to the mandatory respondent and not provided by the government. Pursuant to 19 U.S.C. § 1671(a), Commerce is required to impose countervailing duties on merchandise that is produced with the benefit of government subsidies. A foreign government's sale of goods to a company within a particular industry for less than adequate remuneration is a common type of subsidy. *See* 19 U.S.C. § 1677(5)(E)(iv). Such a subsidy exists when (1) a foreign government provides a financial contribution (2) to a specific industry and (3) a recipient within the industry receives a benefit as a result of that contribution. 19 U.S.C. § 1677(5)(B). Analyzing all three factors is therefore necessary for Commerce to determine whether a CVD must be imposed.

To analyze these factors, Commerce often requires information from the foreign government allegedly providing the subsidy. *See Essar Steel Ltd. v. United States*, 721

F. Supp. 2d 1285, 1296-97 (Ct. Int'l Trade 2010), *rev'd on other grounds by* 678 F.3d 1268 (Fed. Cir. 2012). In particular, Commerce asks the foreign government to provide information regarding whether that government provides a financial contribution and whether that contribution is specific to an industry—the first two factors of the statutory requirement for a subsidy. Commerce requests this information from foreign governments because, normally, those governments "are in the best position to provide information regarding the administration of their alleged subsidy programs, including eligible recipients." *Id.* at 1297.

Additionally, Commerce sometimes requires information from a foreign government to determine whether a particular respondent received a benefit from an alleged subsidy—the statute's third criterion. In determining the amount of benefit a particular respondent receives, Commerce generally compares the price paid by the respondent to the good's market price, also known as a benchmark. *See* 19 U.S.C. § 1677(5)(E); 19 C.F.R. § 351.511(a)(2)(i). However, in situations in which there is no domestic or world market price for the allegedly subsidized good, Commerce determines the benchmark by analyzing whether the foreign government set the price for the good pursuant to market principles—that is, whether the good was provided to respondents for adequate remuneration. *See* 19 C.F.R. § 351.511(a)(2)(ii). To make this determination, Commerce requires information from the foreign government about how it sets its price.

In instances in which Commerce lacks the necessary information to make such a determination, the statute instructs Commerce to use facts otherwise available. 19 U.S.C. § 1677e(a). Additionally, the statute permits Commerce to apply an adverse inference in selecting from among the facts otherwise available when an interested party fails to cooperate by not acting to the best of its

ability to comply with a request for information.   19
U.S.C. § 1677e(b).

### a.  The Statute

19 U.S.C. § 1677e(b) reads:

> If the administering authority or the Commission
> (as the case may be) finds that an interested party
> has failed to cooperate by not acting to the best of
> its ability to comply with a request for information
> from the administering authority or the Commis-
> sion, the administering authority or the Commis-
> sion (as the case may be), in reaching the
> applicable determination under this subtitle, may
> use an inference that is adverse to the interests of
> that party in selecting from among the facts oth-
> erwise available.

The dispute in this case centers on the phrase "that
party," which has its antecedent basis in the words "inter-
ested party."  Fine Furniture argues that Commerce went
beyond the statutory limitations of section 1677e by using
the government's non-responsiveness to Commerce's
questionnaire as justification to penalize Fine Furniture
with a subsidy rate based on adverse inferences.  Fine
Furniture argues that this is improper because Fine
Furniture was fully cooperative in its own responses to
Commerce and had no control over the government.
Further, Fine Furniture argues that the statute is unam-
biguous in its protection of cooperative parties.

The Government responds that the statutory grant of
authority set forth in 19 U.S.C. § 1677e(b) is clear and
unambiguous.  The Government argues that there is no
support in the statute for Fine Furniture's assertion that
the authorization to apply adverse inferences cannot
extend to instances when doing so affects a cooperating
respondent.  Thus, the Government argues that Com-

merce's actions were consistent with the plain meaning of the statute and should be upheld.

We agree with the Government and find that 19 U.S.C. § 1677e(b) is clear and unambiguous in its authorization of the use of adverse inferences to substitute for information not provided by an interested party. The statute defines an "interested party" to include "the government of a country in which [the subject] merchandise is produced or manufactured." 19 U.S.C. § 1677(9)(B). Thus, on its face, the statute authorizes Commerce to apply adverse inferences when an interested party, including a foreign government, fails to provide requested information. Although Fine Furniture argues that this authorization cannot extend to instances when doing so affects a cooperating respondent, there is no support for this exception in the statute's text.

Because the statute is unambiguous, there is no need to look to the second prong of the *Chevron* analysis. We turn next to the propriety of Commerce's application of adverse inferences on these facts in light of 19 U.S.C. § 1677e(b).

### b. Application of the Statute

Fine Furniture argues that Commerce's inferences were not adverse to the government of China, but only to Fine Furniture because Fine Furniture was the only party who was actually impacted by the inferences. Absent a finding that Fine Furniture was non-cooperative, Fine Furniture argues that the application of an adverse inference against Fine Furniture is improper under 19 U.S.C. § 1677e(b). Fine Furniture argues that the Court of International Trade has recognized that a party is the target of an adverse inference if it "suffers the effect" of the adverse inferences. Appellant's Br. 17-18 (quoting *SKF USA Inc. v. United States*, 675 F. Supp. 2d 1264, 1277 (Ct. Int'l Trade 2009)).

Fine Furniture further challenges Commerce's method for filling the gap in information left by the government of China's lack of response by selecting the highest electricity rates to calculate the benchmark used to determine the benefit received by Fine Furniture from the inferred subsidy. Fine Furniture argues that Commerce's adoption of an adverse benchmark, which was applied to Fine Furniture's benefit calculation, is a direct application of adverse inferences against a cooperative party. According to Fine Furniture, it provided Commerce with all of the information necessary to determine the appropriate electricity rate without applying an adverse inference. Even if there were gaps in the record, without a separate determination that Fine Furniture failed to cooperate to the best of its ability, Fine Furniture argues that Commerce cannot use adverse facts to fill in gaps if doing so will negatively impact Fine Furniture.

The Government defends Commerce's application of adverse inferences, arguing that Commerce properly determined that the government of China's refusal to answer questions about the Electricity Program justified the use of adverse inferences to substitute for the missing information. The Government argues that using adverse inferences to substitute for information that the government of China refused to provide was not an application of adverse inferences against Fine Furniture, but rather it was an application of adverse inferences in ascertaining the information that the government of China—a non-cooperating party—did not provide.

The Government points out that Commerce used respondents' actual reported data to measure the benefit received in order to ensure that the adverse inference was applied *only* with regard to the missing information and not the information supplied by Fine Furniture. Therefore, the Government argues, by not substituting any adverse inferences for the facts provided by Fine Furni-

ture, Commerce did not apply adverse inferences against Fine Furniture.

The Government argues that Fine Furniture mischaracterizes the information gap Commerce needed to fill. The missing information was not simply the data points of electricity rates, but rather how those rates were determined. Absent information from the government of China, Commerce did not know what the list of electricity rates for each province reflected—were they a fair market value or a government subsidy?

Because the government of China refused to provide information as to how the electricity process and costs varied among the various provinces that supplied electricity to industries within their areas, Commerce relied on an adverse inference to determine that Fine Furniture received a countervailable subsidy. *Fine Furniture*, 865 F. Supp. 2d at 1260. Commerce also noted that the government of China did not provide the data sufficient to establish the benchmark price for electricity, leading Commerce to apply an adverse inference by choosing the highest applicable electricity rates for the user categories reported by the mandatory respondents to calculate the benchmark. *Id*. at 1261-62. This selection is made under the assumption that this price is the least likely to be subsidized and is consistent with what Commerce has done in other administrative determinations in which the government of China refused to respond to portions of Commerce's questionnaires.

The Government further argues that Fine Furniture misreads the *SKF* decision. The Government distinguishes *SKF*, pointing out that in *SKF* Commerce itself "openly acknowledged that it chose the [adverse] rate because that rate was adverse to" the cooperating plaintiff. *SKF*, 675 F. Supp. 2d at 1276. Here Commerce takes the position that adverse inferences were not applied

against any of the information provided by Fine Furniture.

### 3.  Analysis

The record supports the Government's position. In reaching its decision, Commerce explained that the government of China failed to cooperate by not acting to the best of its ability to comply with Commerce's request for information because it did not respond by the deadline dates, nor did it adequately explain why it was unable to provide the requested information. Because the government of China did not provide the requested information, Commerce was forced to substitute for the missing information and did so in accordance with 19 U.S.C. § 1677e(b).

Commerce did not apply adverse inferences to substitute for any information that was actually submitted by the cooperating respondents, such as the actual rate Fine Furniture reported paying for electricity. Commerce used this rate to determine the amount of benefit that Fine Furniture received under the Electricity Program.

Further, Commerce's actions are entirely consistent with this court's precedent. Specifically, in *KYD, Inc. v. United States*, 607 F.3d 760, 768 (Fed. Cir. 2010), this court found that a collateral impact on a cooperating party does not render the application of adverse inferences in a CVD investigation improper. KYD was closely affiliated with King Pac, the non-cooperating party: KYD is an importer of bags made by King Pac. *Id.* at 761. This court held that an adverse inference imposed due to King Pac's failure to cooperate that collaterally impacts KYD was proper and has the potential to encourage cooperation from King Pac, or it would at least encourage importers not to deal with King Pac and other non-cooperating exporters. *Id.* at 768.

Conversely, in the case that Fine Furniture relies upon, *Changzhou Wujin Fine Chemical Factory Co., Ltd. v. United States*, 701 F.3d 1367, 1370 (Fed. Cir. 2012), the parties were unrelated, unaffiliated companies. In this case, we held that even though the hypothetical rate, determined using adverse inferences, was not directly applied to cooperating respondents, the cooperating respondents were the only entities impacted by the recalculated rate. *Id.* at 1378. At least in part due to the relationship among the parties, we held applying this adverse rate to cooperating respondents was improper, since a remedy reaching a cooperating party would have no impact on the non-cooperating parties. *Id.*

In the present case, Fine Furniture is a company within the country of China, benefitting directly from subsidies the government of China may be providing, even if not intending to use such subsidy for anticompetitive purposes. Therefore, a remedy that collaterally reaches Fine Furniture has the potential to encourage the government of China to cooperate so as not to hurt its overall industry. Unlike in *SKF*, Commerce in this case did not choose the adverse rate to punish the cooperating plaintiff, but rather to provide a remedy for the government of China's failure to cooperate. *SKF*, 675 F. Supp. 2d at 1276.

The purpose of 19 U.S.C. § 1677e(b), according to the URAA Statement of Administrative Action ("SAA"), which "shall be regarded as an authoritative expression by the United States concerning the interpretation and application of the [URAA]," 19 U.S.C. § 3512(d), is to encourage future cooperation by "ensur[ing] that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully." H.R. Doc. No. 103-316, vol. 1, at 870, *reprinted in* 1994 U.S.C.C.A.N. 4040. Additionally, by authorizing Commerce to provide a reasonable estimate based on the best facts available, accompanied by a reasonable adverse inference used in place of missing

information, this statute provides a mechanism for remedying sales at less than fair value to aid in the protection of U.S. industry.

Although it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.

CONCLUSION

We *affirm* the Court of International Trade's Final Determination.

**AFFIRMED**