Slip Op. 23-98

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| KG DONGBU STEEL CO., LTD., DONGBU STEEL CO., LTD., AND DONGBU INCHEON STEEL CO., LTD., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> NUCOR CORPORATION AND STEEL DYNAMICS, INC., <br><br> Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge <br><br> Court No. 22-00047 |

## <u>OPINION AND ORDER</u>

[Remanding the final determination of the U.S. Department of Commerce in the countervailing duty review of certain corrosion-resistant steel products from the Republic of Korea.]

Dated: July 7, 2023

Brady W. Mills, Donald B. Cameron, Julie C. Mendoza, R. Will Planert, Mary S. Hodgins, Eugene Degnan, Edward J. Thomas, III, Jordan L. Fleischer, and Nicholas C. Duffey, Morris, Manning & Martin, LLP, of Washington, D.C., for Plaintiffs KG Dongbu Steel Co., Ltd., Dongbu Steel Co., Ltd., and Dongbu Incheon Steel Co., Ltd.

Claudia Burke, Assistant Director, Elizabeth Speck, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C. With them on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of Counsel on the brief was Ayat Mujais, Attorney, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, D.C.

Alan H. Price, Christopher B. Weld, Tessa V. Capeloto, and Adam M. Teslik, Wiley Rein LLP, of Washington, D.C., for Defendant-Intervenor Nucor Corporation.

Jeffrey D. Gerrish, Roger B. Schagrin, and Saad Y. Chalchal, Schagrin Associates, of Washington, D.C., for Defendant-Intervenor Steel Dynamics, Inc.

Choe-Groves, Judge: Plaintiffs KG Dongbu Steel Co., Ltd., Dongbu Steel Co., Ltd., and Dongbu Incheon Steel Co., Ltd. (collectively, "KG Dongbu" or "Plaintiffs") challenge the U.S. Department of Commerce's ("Commerce") Certain Corrosion-Resistant Steel Products From the Republic of Korea: Final Results and Partial Rescission of Countervailing Duty Administrative Review; 2019. Compl., ECF No. 12; Certain Corrosion-Resistant Steel Products From the Republic of Korea ("Final Results"), 87 Fed. Reg. 2759 (Dep't of Commerce Jan. 19, 2022) (final results and partial rescission of countervailing duty administrative review; 2019); see also Issues and Decision Memorandum for the Final Results and Partial Rescission of the 2019 Administrative Review of the Countervailing Duty Order

on Certain Corrosion-Resistant Steel Products from the Republic of Korea ("Final IDM"), PR 213.[1]

KG Dongbu challenges: (1) Commerce's determination that the first through third debt-to-equity restructurings provided a countervailable subsidy; (2) Commerce's determination that the benefits from KG Dongbu's debt-to-equity restructurings that Commerce first found countervailable in Certain Corrosion-Resistant Steel Products From the Republic of Korea ("Preliminary Results"), 86 Fed. Reg. 37,740 (Dep't of Commerce July 16, 2021) (preliminary results of countervailing duty administrative review, 2019) passed through to KG Dongbu despite the change in ownership during the 2019 period of review; (3) Commerce's calculation of the uncreditworthiness benchmark for purposes of measuring the benefit from KG Dongbu's restructured long term loans and bonds; and (4) Commerce's calculation of the unequityworthy discount rate for purposes of measuring the benefits from the equity infusions from government-controlled creditors.  Pls.' Mot. J. Agency R. and Mem. Supp. ("Pls.' Br."), ECF Nos. 33, 34; Pls.' Reply Br. Supp. Mot. J. Agency R. ("Pls.' Reply Br."), ECF Nos. 40, 41. Defendant United States ("Defendant") and Defendant-Intervenor Nucor Corporation ("Nucor") argue that the Court should sustain the Final Results.

---

[1] Citations to the administrative record reflect the public administrative record ("PR") document numbers.  ECF No. 44.

Def.'s Resp. Br. Pl.'s Mot. J. Agency R. ("Def.'s Resp. Br."), ECF Nos. 35, 36;

Def.-Interv.'s Resp. Mot. J. Agency R. ("Def.-Interv.'s Resp. Br."), ECF Nos. 37,

38, 39. For the reasons discussed below, the Court remands Commerce's <u>Final</u>

<u>Results</u>.

## ISSUES PRESENTED

The Court reviews the following issues:

1.  Whether Commerce's determination that the first through third debt-to-equity restructurings provided a countervailable benefit to KG Dongbu is supported by substantial evidence and in accordance with the law;

2.  Whether Commerce's determination that the benefits from the debt-to-equity restructurings passed through to KG Dongbu despite the change in ownership is supported by substantial evidence;

3.  Whether Commerce's calculations of the uncreditworthy benchmark rate are supported by substantial evidence; and

4.  Whether Commerce's calculations of the unequityworthy discount rate are supported by substantial evidence.

## PROCEDURAL HISTORY

Commerce published its countervailing duty order in the Federal Register.

<u>Certain Corrosion-Resistant Steel Products From India, Italy, Republic of Korea</u>

and the People's Republic of China, 81 Fed. Reg. 48,387 (Dep't of Commerce July 25, 2016) (countervailing duty order).  Commerce initiated an administrative review of the countervailing duty order on certain corrosion-resistant steel products from Korea for the period of January 1, 2019, to December 31, 2019, selecting KG Dongbu and Hyundai Steel Company ("Hyundai Steel") as mandatory respondents. Initiation of Antidumping and Countervailing Duty Administrative Reviews, 85 Fed. Reg. 54,983, 54,990–91 (Dep't of Commerce Sept. 3, 2020).

Commerce issued the Preliminary Results of the administrative review. Preliminary Results, 86 Fed. Reg. 37,740; Decision Memorandum for the Preliminary Results of the Countervailing Duty Administrative Review; 2019: Certain Corrosion-Resistant Steel Products from the Republic of Korea," (June 12, 2021), PR 173.  Commerce issued the Final Results of the administrative review. Final Results, 87 Fed. Reg. 2759; Final IDM.

## JURISDICTION AND STANDARD OF REVIEW

The U.S. Court of International Trade has jurisdiction pursuant to 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), which grant the Court authority to review actions contesting the final results of an administrative review of a countervailing duty order.  The Court shall hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with the law.  19 U.S.C. § 1516a(b)(1)(B)(i).

**DISCUSSION**

I.      **Countervailable Subsidy Overview**

A countervailable subsidy exists when a foreign government provides a financial contribution to a specific industry that confers a benefit upon a recipient within the industry.  19 U.S.C. § 1677(5); see also Fine Furniture (Shanghai) Ltd. v. United States, 748 F.3d 1365, 1369 (Fed. Cir. 2014).  For equity infusions, a benefit is conferred if "the investment decision is inconsistent with the usual investment practice of private investors, including the practice regarding the provision of risk capital, in the country in which the equity infusion is made."  19 U.S.C. § 1677(5)(E)(i); see also 19 C.F.R. § 351.507(a)(1) (defining a benefit for equity infusions).

Commerce considers an equity infusion to be inconsistent with usual investment practice if the price paid by the government for newly issued shares is greater than the price paid by private investors for the same (or similar form of) newly issued shares.  19 C.F.R. § 351.507(a)(2)(i).  Commerce does not consider private sector investor prices if Commerce concludes that private investor purchases of newly issued shares are not significant.  Id. § 351.507(a)(2)(iii).  When significant private sector participation does not exist, Commerce determines whether the firm funded by the government-provided equity is equityworthy or unequityworthy at the time of the equity infusion.  Id. § 351.507(a)(3).  A

determination that the firm is unequityworthy constitutes a determination that the equity infusion is inconsistent with the usual investment practice of private investors, and therefore, that a benefit to the firm exists in the amount of the equity infusion. Id.; see also id. § 351.507(a)(6).

Commerce considers a firm to be equityworthy if Commerce determines that, from the perspective of a reasonable private investor examining the firm at the time the government-provided equity infusion took place, the firm showed an ability to generate a reasonable rate of return within a reasonable period of time. Id. § 351.507(a)(4)(i). In making this determination, Commerce considers the following factors: (A) an objective analysis of the future financial prospects of the recipient firm, (B) current and past indicators of the recipient firm's financial health, (C) rates of return on equity in the three years prior to the government equity infusion, and (D) private investor equity investment into the recipient firm. Id. § 351.507(a)(4)(i)(A)–(D). Commerce may focus on the equityworthiness of a specific project, in appropriate circumstances, rather than the company as a whole. Id. § 305.507(a)(4)(i).

## II.   First Through Third Debt-to-Equity Restructurings

### A.   Whether Commerce's Determination is in Accordance with the Law

Plaintiffs argue that Commerce's determination that the first through third debt-to-equity restructurings provided a countervailable subsidy to KG Dongbu is not in accordance with the law because Commerce has an established practice for determining whether debt-to-equity restructurings provide a countervailable subsidy, but Commerce ignored that practice and failed to provide a reasonable explanation for departing from its established practice. Pls.' Br. at 15–20. Defendant defends Commerce's determination and argues that "the majority of Commerce's argument in [the case cited by Plaintiffs to establish Commerce's alleged established practice] turned on the fact that the plaintiff . . . failed to exhaust its administrative remedies with respect to whether the private investors' participation and share were significant." Def.'s Resp. Br. at 16.

If Commerce has a routine practice for addressing similar situations, it must either apply that practice or provide a reasonable explanation regarding why Commerce has deviated from that practice. See SKF USA, Inc. v. United States, 263 F.3d 1369, 1382 (Fed. Cir. 2001) ("An agency action is arbitrary when the agency offers insufficient reasons for treating similar situations differently."); see also M.M. & P. Mar. Advancement, Training, Educ. & Safety Program v. Dep't of

Commerce, 729 F.2d 748, 755 (Fed. Cir. 1984) ("An agency is obligated to follow precedent, and if it chooses to change, it must explain why."); see also Cinsa, S.A. de C.V. v. United States, 21 CIT 341, 349, 966 F. Supp. 1230, 1238 (1997) ("Commerce can reach different determinations in separate administrative reviews but it must employ the same methodology or give reasons for changing its practice.").

First, the Court finds that Commerce has a standard practice regarding not reexamining the countervailability of Dongbu Steel's equity infusions. There were three separate debt-to-equity restructurings prior to the contested review, in February 2015, May 2016, and April 2018. See Certain Corrosion-Resistant Steel Products from the Republic of Korea, Case No. C-580-879: Dongbu's Initial Questionnaire Response (Dec. 3, 2020) ("KG Dongbu's IQR") at 40–46, PR 74–78. Commerce determined previously that no countervailable subsidy existed in each of the three previous debt-to-equity restructurings. Final IDM at 46–47. In Certain Corrosion-Resistant Steel Products From the Republic of Korea ("CORE 2018 Final Results"), 86 Fed. Reg. 29,237 (Dep't of Commerce June 1, 2021) (final results and partial rescission of countervailing duty administrative review; 2018) and accompanying Issues and Decision Memorandum, Commerce determined that the same debt-to-equity restructurings currently under review provided no countervailable benefit. Id. at 29,238. As KG Dongbu highlights,

"the facts on the record regarding the first three [debt-to-equity restructurings] were also on the record in the [CORE 2018 Final Results], except for documents related to the third [debt-to-equity restructuring] that occurred in 2018, were also on the record of the CORE 2015–2016 and 2017 Reviews."  Pls.' Br. at 16.

The Court notes that Commerce reviewed the same debt-to-equity restructurings as in previous reviews, though resulting in a different outcome here. Compare Certain Corrosion-Resistant Steel Products From the Republic of Korea, 84 Fed. Reg. 11,749, 11,750 (Dep't of Commerce Mar. 28, 2019) (final results and partial rescission of countervailing duty administrative review; 2015–2016) and accompanying Issues and Decision Memorandum, and Certain Corrosion-Resistant Steel Products From the Republic of Korea, 85 Fed. Reg. 15,112, 15,113 (Dep't of Commerce Mar. 17, 2020) (final results of countervailing duty administrative review; 2017) and accompanying Issues and Decision Memorandum, with Final Results, 87 Fed. Reg. at 2760, and Final IDM at 54.  Significantly, the Court observes that Commerce's standard countervailing duty questionnaire language explicitly states that "[a]bsent new information warranting a program reexamination, [Commerce] *will not reevaluate prior determinations regarding the countervailability of programs*."  Administrative Review of Certain Corrosion-Resistant Steel Products from the Republic of Korea: Countervailing Duty Questionnaire (Oct. 6, 2020) at II-1, PR 22–23 (emphasis added).  Based on these

facts and the prior three debt-to-equity restructurings in February 2015, May 2016, and April 2018, the Court concludes that Commerce has a standard practice of not reexamining the countervailability of Plaintiffs' equity infusions absent new information.

Second, in order to depart from Commerce's routine practice, Commerce must provide a reasonable explanation. SKF USA, Inc., 263 F.3d at 1382. The Court observes that Commerce has neither provided a sufficient explanation nor cited new information on the record that relates to whether the first three debt-to-equity restructurings provided a countervailable benefit. Instead, as justification for Commerce's decision to evaluate the first three debt-to-equity restructurings anew, Commerce cited evidence based on the fourth debt-to-equity restructuring, treating each debt-to-equity restructuring as part of one ongoing transaction rather than four separate, independent transactions. In the Final IDM, addressing KG Dongbu's argument that Commerce departed from its established practice by reexamining its prior determinations with respect to the first three debt-to-equity restructurings, Commerce reasoned that "Commerce's benefit determinations in each segment of a proceeding stand on their own and are made on a fact-specific basis." Final IDM at 46 (citing Hyundai Steel Co. v. United States, 42 CIT __, __, 319 F. Supp. 3d 1327, 1342 n.13 (2018)). Commerce explained that it reexamines findings of financial contribution and specificity made in a prior segment of the

same proceeding when new evidence necessitates reexamination.  Id. at 46.  As

justification for Commerce's decision to reevaluate its prior determinations,

Commerce noted that:

> While the record evidence shows that private creditors accounted for
> the same debt-to-equity conversion amounts as in the prior reviews, we
> cannot rely on this fact alone to assess whether KG Dongbu was
> equityworthy between 2014 and 2018.  This is because in the instant
> review, unlike in the prior reviews, there were private investors
> independent from the creditors' committee involved in the fourth equity
> infusion during the 2019 [period of review].  This inclusion of private
> investors was a factual change from prior reviews that led us to
> reconsider the role [Korean Development Bank] played in its control of
> the creditors' committee.

Id. at 47.  KG Dongbu argues, however, that the record evidence is not new, and is

the same evidence considered by Commerce in the first three debt-to-equity

restructuring determinations.  Pls.' Br. at 15–20.  The Court notes that the record

evidence cited by Commerce as justification for its deviation from its past practice

does not deal directly with the first through third debt-to-equity restructurings and

is not a sufficient explanation to justify departing from its standard practice.  See

Final IDM at 47 (citing KG Dongbu's IQR at 44); see also KG Dongbu's IQR at

44 (discussing new private investors involved in the fourth debt-to-equity

restructuring as a factual distinction from the first three debt-to-equity

restructurings).  Instead, Defendant justifies Commerce's determination by arguing

that Plaintiff seeks to "decontextualize the various rounds of the restructuring

program[,]" Def.-Interv.'s Resp. Br. at 16, not by citing new evidence about the first through third debt-to-equity restructurings that came to light after Commerce had made prior determinations regarding the first through third debt-to-equity restructurings.

Because Commerce failed to provide an adequate explanation for its decision to deviate from its prior determinations, the Court concludes that Commerce's determination is arbitrary and not in accordance with the law. The Court remands Commerce's determination that the first through third debt-to-equity restructurings provided a countervailable subsidy to KG Dongbu for reconsideration or further explanation.

### B. Whether Commerce's Determination is Supported by Substantial Evidence

Plaintiffs argue that Commerce's determination to treat the first through third debt-to-equity restructurings as countervailable subsidies to KG Dongbu is not supported by substantial evidence. Pls.' Br. at 23–29. Because the Court is remanding Commerce's determination as not in accordance with the law, the Court also remands the issue for consideration of whether Commerce's determination is supported by substantial evidence.

**III.   Whether Commerce's Determination Regarding Debt-to-Equity Restructuring Benefits Pass Through is Supported by Substantial Evidence**

Plaintiffs argue that Dongbu properly declined to submit a response to Commerce's Change-in-Ownership Appendix with its initial questionnaire response because Commerce had not found that any non-recurring subsidies provided benefits to Dongbu at that time.  Id. at 29.  Plaintiffs contend that "record evidence demonstrates that Dongbu's change in ownership occurred at arm's length and for fair market value such that any alleged subsidies from the first through third [debt-to-equity restructurings] were extinguished[,]" therefore, "even if the Court finds that Commerce's disregard of its prior practice is lawful, the record shows that any benefits associated with the [debt-to-equity restructurings] did not pass through to KG Dongbu Steel[,]" but were instead "extinguished by the arm's-length purchase of Dongbu by the KG Consortium."  Id.  Defendant asserts that Commerce presumes that a non-recurring subsidy benefits a recipient "over the average useful life of the relevant assets[.]"  Def.'s Resp. Br. at 19.  Defendant argues that a respondent may rebut this presumption by proving that a change in ownership occurred in which the previous owner sold all or substantially all of a company or its assets in an arm's length sale for fair market value.  Id. at 19–20.

As noted above, the Court is remanding Commerce's determination as not in accordance with the law based on Commerce's arbitrary departure from prior

practice without sufficient explanation.  On remand, Commerce may reconsider the record with respect to whether KG Dongbu received any countervailable subsidies; therefore, the Court also remands this issue for Commerce to reconsider whether substantial evidence supports a determination that any change in ownership occurred at arm's length and for fair market value that extinguished any alleged subsidies from the first through third debt-to-equity restructurings to KG Dongbu.

**IV.    Whether Commerce's Uncreditworthy Benchmark Rate Determination is Supported by Substantial Evidence**

Plaintiffs contend that Commerce incorrectly applied the formula for calculating the uncreditworthy benchmark rate.  Pls.' Br. at 36.  Plaintiffs assert that KG Dongbu's outstanding long-term loans and bonds were restructured during the period of review, thus creating "new" loans and bonds with a term of six years. Id.  Plaintiffs argue, however, that Commerce's calculation of the benefit from the "new" loans that were restructured during the period of review used an incorrect three-year interest rate to measure the countervailable loans and bonds.  Id. at 36–37.

Defendant asserts that Commerce correctly applied its regulations regarding the uncreditworthy discount rate and calculated the rate based upon evidence on the record.  Def.'s Resp. Br. at 23.  Defendant argues that Commerce used a correct three-year interest rate as the long-term interest rate paid because no other

interest rates were available.  Id. at 24; see Final IDM at 58.  Commerce

determined that it could not use the six-year interest rate paid by a credit-worthy

company because there was no information on the record regarding any six-year

interest rate paid by a credit-worthy company.  Final IDM at 58.  Plaintiffs contend

that Commerce had all the information necessary to calculate the benchmark rate

and that the term of the loan was six years, not three.  Oral Arg. at 4:20–5:20, June

2, 2023, ECF No. 50 (citing KG Dongbu's IQR at 45).

In the case of a loan, a benefit exists to the extent that the amount a firm

pays on the government-provided loan is less than the amount the firm would have

paid on a comparable commercial loan that the firm could obtain on the market.

19 C.F.R. § 351.505(a)(1).  Under normal circumstances, Commerce will rely on

effective interest rates.  Id.  However, when a firm is deemed uncreditworthy,

Commerce calculates the interest rate pursuant to a specific formula:

$$i_b = [(1-q_n)(1+i_f)^n / (1-p_n)]^{1/n} - 1$$

where:

$n$ = the term of the loan;

$i_b$ = the benchmark interest rate for uncreditworthy companies;

$i_f$ = the long-term interest rate that would be paid by a creditworthy company;

$p_n$ = the probability of default by an uncreditworthy company within n years; and

$q_n$ = the probability of default by a creditworthy company within n years.

Id.  The benefit conferred by an equity infusion shall be allocated over the same period as a non-recurring subsidy.  Id. § 351.507(c).  Commerce determined that KG Dongbu was uncreditworthy and thus used the uncreditworthy benchmark formula in 19 C.F.R. § 351.505(a)(3)(iii).  Final IDM at 58.

Despite Commerce's assertion that there was no information on the record regarding any six-year interest rate, id. at 58, Plaintiffs cite potentially contrary record evidence indicating that the "[r]epayment date of outstanding loans was extended from December 31, 2020 to December 31, 2025[.]"  Oral Arg. at 4:20–5:20, June 2, 2023, ECF No. 50 (citing KG Dongbu's IQR at 45).  Thus, the Court observes that the record evidence seemingly indicates that the loan term might be closer to six years and not three years, and Commerce should at least consider the record evidence and further substantiate the loan term used in its redetermination.  The Court concludes that Commerce's application of the relevant formula and subsequent determination was not supported by substantial evidence because Commerce should consider the potentially contrary evidence presented by Plaintiffs.  The Court remands this issue for Commerce to reconsider the calculation of KG Dongbu's interest rate.

**V.      Whether Commerce's Unequityworthy Discount Rate
          Determination is Supported by Substantial Evidence**

Plaintiffs argue that Commerce incorrectly calculated the discount rates in determining the amount of the benefit in each year of the fifteen-year allocation periods for the average useful life of the relevant assets.  Pl.'s Br. at 40–41. Defendant contends that Commerce could not use a six-year creditworthy interest rate because there was no information regarding a six-year interest rate paid by a creditworthy company on the record.  Def.'s Br. at 24.

As noted above, the Court is remanding for Commerce to reconsider whether the record evidence establishes a loan term of six years or three years. The Court also remands Commerce's calculation of discount rates in determining the amount of the benefit in each year of the fifteen-year allocation periods for the average useful life of the relevant assets based on Commerce's reconsideration of the record evidence.

## CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that the Final Results, 87 Fed. Reg. 2759, are remanded to Commerce for reconsideration consistent with this opinion; and it is further

**ORDERED** that this case shall proceed according to the following schedule:

(1)      Commerce shall file the remand determination on or before

October 5, 2023;

(2)    Commerce shall file the administrative record on or before

October 18, 2023;

(3)    Comments in opposition to the remand determination shall be

filed on or before November 20, 2023;

(4)    Comments in support of the remand determination shall be filed

on or before December 20, 2023; and

(5)    The joint appendix shall be filed on or before January 19, 2024.


                                        /s/ Jennifer Choe-Groves
                                    Jennifer Choe-Groves, Judge


Dated:  July 7, 2023
        New York, New York