91 F.3d 171
 18 ITRD 1671
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
MINNESOTA MINING AND MANUFACTURING CO. Appellant,
v.
UNITED STATES INTERNATIONAL TRADE COMMISSION, Appellee,
and
Taiwan Hopax Chemicals Manufacturing Co., Ltd., Yuen Foong
Paper Co. Ltd., Beautone Specialties Co., Ltd.,
and Beautone Specialties Co., Intervenors.
 No. 96-1156.
 United States Court of Appeals, Federal Circuit.
 June 17, 1996.
 
 Before RICH, Circuit Judge, NIES, Senior Circuit Judge, and MICHEL, Circuit Judge.
 NIES, Senior Circuit Judge.
 
 
 1
 Minnesota Mining and Manufacturing (3M) appeals the final decision of the U.S. International Trade Commission that the intervenors (collectively Beautone) did not violate section 337 of the Tariff Act of 1930 (codified at 19 U.S.C. § 1337) through the importation into the United States, the sale for importation, or the sale within the United States after importation, of certain adhesives and products containing the adhesives. The Commission determined that there was no violation because Beautone did not infringe claims 1, 2, 4, or 5 of United States Patent No. 4,166,152, assigned to 3M. We affirm.
 
 BACKGROUND
 
 2
 The '152 patent is directed to an adhesive for use on repositionable notes, such as 3M's Post-It TM brand notes. The claimed adhesive, the key to repositionability, contains numerous inherently tacky, elastomeric microspheres.* Conventional flat film adhesives, used on tapes such as 3M's Scotch TM brand tape, provide stickiness over the entire surface of the tape, resulting in very strong adhesive forces. Unlike the flat adhesive, only the tips of the claimed microsphere adhesive make contact with the surface. As a result of the reduced adhesive surface area, the adhesive forces are greatly reduced, permitting repositioning of the note.
 
 
 3
 3M filed its complaint under section 337 alleging infringement of certain claims of the '152 patent by Beautone. Initial determinations were issued first by Chief ALJ Saxon and then, after a remand ordered by the Commission for additional findings, by ALJ Luckern. The Commission adopted Judge Luckern's initial determination, and then issued its final decision in which it affirmed Judge Saxon's finding that Beautone did not infringe the asserted claims, either literally or under the doctrine of equivalents. This appeal followed.
 
 DISCUSSION
 
 4
 On appeal, 3M assigns error to the Commission's claim construction, and to the finding of noninfringement under the doctrine of equivalents. In particular, 3M asserts the Commission erred in construing the phrase "in the presence of" as requiring the suspension stabilizer to be ionic when charged to the vessel, i.e., that under the claim the stabilizer can not be transformed from nonionic to ionic in situ. Regarding infringement, 3M contends that Beautone's product, which is prepared using two nonionic stabilizers having individual interfacial tensions of 9 and 13, is equivalent to the claimed product, which must have an interfacial tension "of at least about 15.0."
 
 
 5
 Under the Commission's interpretation that the stabilizer must be ionic when it is put into the vessel, we agree that a nonionic stabilizer is not an equivalent substituent. To so hold would effectively read the ionic limitation out of the claim. Conversely, if we were to give the claim the interpretation proffered by 3M--that the claims cover in situ formation of an ionic stabilizer--and further if we assume that Beautone's nonionic stabilizers actually become ionic in situ (there is no test so proving), 3M's infringement case nevertheless suffers fatally from a lack of proof.
 
 
 6
 3M offered no proof below that Beautone's product contained an ionic suspension stabilizer having an interfacial tension equivalent to at least 14.8.** Indeed, the only evidence in the record regarding the interfacial tension claim limitation is that Beautone's two nonionic stabilizers have a combined interfacial tension of 11.0 at the start. 3M proffered no evidence regarding Beautone's actual in situ interfacial tension. While 3M's expert, Dr. Poehlein, did testify about the in situ reaction, his testimony was that the in situ reaction between ingredients would have the effect of LOWERING the interfacial tension from 11.0. On cross-exam, Dr. Poehlin testified that he did not know how far below 11.0 the interfacial tension would go because he "never measured that number." Nor was he aware that 3M ever measured Beautone's interfacial tension.
 
 
 7
 Nevertheless, 3M contends that Beautone's products have an interfacial tension that is equivalent to that claimed. Yet, as pointed out above, 3M did not prove the actual VALUE of the in situ interfacial tension of Beautone's combined stabilizers. It is impossible to determine equivalency without a value for Beautone's alleged in situ interfacial tension. 3M's brief is long on conclusory attorney argument regarding equivalency, but the record is woefully short on EVIDENCE. Absent preponderant evidence that Beautone's products contained an ionic suspension stabilizer with an interfacial tension that is equivalent to what was claimed, infringement can not be found.
 
 
 8
 We have considered 3M's other arguments, and find them unpersuasive. We need not consider Beautone's other defenses.
 
 CONCLUSION
 
 9
 For the foregoing reasons, we affirm the Commission's decision.
 
 
 
 *
 Exemplary claim 1 recites (emphasis added):
 Infusible, solvent-insoluble, solvent-dispersible, inherently tacky, elastomeric polymeric microspheres formed from non-ionic monomers and comprising a major portion of at least one oleophilic, water-emulsifiable alkyl acrylate or methacrylate ester, said polymeric microspheres having a glass transition temperature below about -20? C, and having been prepared by aqueous suspension polymerization IN THE PRESENCE OF at least one anionic emulsifier at a concentration level above said emulsifier's critical micelle concentration and AN IONIC SUSPENSION STABILIZER HAVING AN INTERFACIAL TENSION OF AT LEAST ABOUT 15.0 DYNES PER CENTIMETER.
 
 
 **
 Judge Luckern construed the claim phrase "at least about 15.0" as literally meaning at least 14.8. Because 3M failed to raise the issue below, 3M can not now challenge that construction. Checkpoint Sys., Inc. v. United States Int'l Trade Comm'n, 54 F.3d 756, 760, 35 USPQ2d 1042, 1045-46 (Fed.Cir.1995)