92 F.3d 1206
 18 ITRD 1671
 NOTICE: Federal Circuit Local Rule 47.6(b) states that opinions and orders which are designated as not citable as precedent shall not be employed or cited as precedent. This does not preclude assertion of issues of claim preclusion, issue preclusion, judicial estoppel, law of the case or the like based on a decision of the Court rendered in a nonprecedential opinion or order.
LACLEDE STEEL CO., Plaintiff-Appellant,
v.
The UNITED STATES, Defendant-Appellee,
and
HYUNDAI PIPE CO., LTD., Korea Steel Pipe Co., Ltd., Pusan
Steel Pipe Co., Ltd., Defendants,
and
DONGBU STEEL CO., LTD. and Union Steel Manufacturing Co.,
Ltd., Defendants-Appellees.
 No. 96-1029.
 United States Court of Appeals, Federal Circuit.
 July 8, 1996.
 
 Before ARCHER, Chief Judge, RICH, Circuit Judge, and SMITH, Senior Circuit Judge.
 
 ARCHER
 
 1
 Laclede Steel Company (Laclede) appeals the orders dated June 22, 1995 of the Court of International Trade, allowing Union Steel Manufacturing Company, Limited (Union) and Dongbu Steel Company, Limited (Dongbu) to intervene in the pending judicial review of an antidumping determination by the United States Department of Commerce (Commerce). Final judgment in that case was entered by the Court of International Trade on August 11, 1995. Laclede Steel Co. v. United States, Consolidated No. 92-12-00784 (Ct. Int'l Trade Aug. 11, 1995). We affirm.
 
 BACKGROUND
 
 2
 Pursuant to a petition filed by Laclede and other domestic steel pipe manufacturers in October 1991, Commerce initiated an antidumping investigation concerning circular welded non-alloy steel pipe, including, inter alia, steel pipe imported from Korea. Both Union and Dongbu as Korean steel pipe manufacturers filed entries of appearance in this investigation. In addition, counsel for Union and Dongbu submitted factual data on exports during the period of investigation to assist Commerce in the selection of the mandatory respondents. Thereafter, Commerce designated three Korean steel pipe manufacturers as mandatory respondents, and another Korean manufacturer volunteered and was treated as a mandatory respondent. Although Dongbu was considered as a possible fifth mandatory respondent, neither Dongbu nor Union was designated as such.
 
 
 3
 Commerce published its Final Determination in September 1992 setting forth a specific duty rate for each mandatory respondent and an "all others" rate for all other respondents. Thus, Dongbu and Union were made subject to an "all others" rate. Laclede, as well as several mandatory respondents, appealed to the Court of International Trade from this Final Determination. The court remanded three issues to Commerce for further consideration. Commerce thereafter filed its Final Remand Results with the Court of International Trade which reduced the duty rate for the mandatory respondents. This caused a reduction in the "all others" rate from 6.37 to 4.80 percent. Union and Dongbu then filed motions to intervene in the Court of International Trade proceeding and simultaneously sought preliminary injunctions to defer liquidation of their entries of imported merchandise pending the final decision of the court. These motions were made to obtain liquidation of their entries at the reduced "all others" duty rate. The court granted the motions and the preliminary injunctions. Laclede now appeals.
 
 DISCUSSION
 
 4
 Laclede contends that Union and Dongbu never actively participated in the Commerce investigation and therefore cannot be classified as "parties to the proceeding" for purposes of intervention. Based on language in Encon Industries, Incorporated v. United States, Nos. 94-03-00189, 94-145, 1994 WL 520917 (Ct. Int'l Trade Sept. 19, 1994), Laclede contends that the mere filing of an appearance is insufficient participation for standing to intervene. The United States and Union and Dongbu are in agreement and contend that the Court of International Trade properly granted these intervention motions. They assert that the intervenors are both interested parties and that they participated sufficiently in the administrative proceedings to be considered as having the status of parties. Under these circumstances, they argue that Dongbu and Union were entitled, pursuant to 28 U.S.C. § 2631(j)(1)(B) (1994), to intervene in the court action as a matter of right. Section 2631(j)(1)(B) provides:
 
 
 5
 Any person who would be adversely affected or aggrieved by a decision in a civil action pending in the Court of International Trade may, by leave of court, intervene in such action, except that -
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 (B) in a civil action under section 516A of the Tariff Act of 1930, only an interested party who was a party to the proceeding in connection with which the matter arose may intervene, and such person may intervene as a matter of right.
 
 
 9
 Thus, intervention is a matter of right if the movant is an interested party who was a party to the underlying antidumping proceeding. See 19 U.S.C. § 1516 (1994).
 
 
 10
 Title 28 provides no definition of "party to the proceeding," but Commerce has set forth a definition in 19 C.F.R. § 353.2(o) (1995), as follows:
 
 
 11
 Party to the proceeding means any interested party within the meaning of paragraph (k) of this section, which actively participates, through written submissions of factual information or written argument, in a particular decision by the Secretary subject to judicial review.
 
 
 12
 The regulatory definition has been recognized and applied by the Court of International Trade. See Rhone Poulenc, Inc. v. United States, 738 F.Supp. 541, 542 (Ct. Int'l Trade 1990) (determining that a prior version of the regulation was applicable because it was in effect at the time the investigation was initiated).
 
 
 13
 The cases in the Court of International Trade have also indicated that the participation requirement "was intended to bar action by someone who did not take the opportunity to further its interests on the administrative level." American Grape Growers v. United States, 604 F.Supp. 1245, 1249 (Ct. Int'l Trade 1985). Although the participation need not be extensive, it must reasonably convey the separate status of a party. See id. ("The listing of [a party] as a co-petitioner in a post conference brief is sufficient to satisfy these standards."). And, the participation should be meaningful enough "to put Commerce on notice of a party's concerns." Encon, 1994 W.L. 520917, at * 1.
 
 
 14
 We are convinced that Union and Dongbu actively participated in the administrative proceeding and should, therefore, be considered parties to the proceeding. Not only did they file appearances in, and appear to be represented by counsel throughout, the antidumping investigation by Commerce, they also submitted factual data on exports to assist Commerce in the selection of mandatory respondents. In doing so, they corresponded with Commerce requesting exclusion as mandatory respondents, thereby impliedly indicating their willingness to accept an "all others" rate. Thus, Commerce was made aware of intervenors' interests in the investigation, and intervenors took the steps they deemed necessary to further their interests at the administrative level. Such an active participation made both Union and Dongbu a "party to the proceeding" within the meaning of that statutory term.
 
 
 15
 Laclede's reliance on Encon is misplaced. That case is factually distinguishable from this case because Encon attempted to challenge Commerce's calculation of the "all others" rate before the Court of International Trade, but it "never submitted factual information to Commerce or made oral or written comments during the proceedings." Encon, 1994 WL 520917, at * 1. As a result, the court found that Encon had not exhausted its administrative remedies. Here, in contrast, Union and Dongbu did participate in the administrative investigation and, by intervening in the court case, did not challenge the "all others" rate but merely sought to have it applied to their merchandise.
 
 
 16
 Laclede also argues that the motions to intervene by Union and Dongbu were untimely because they were filed 28 months after the commencement of the action and that this delay prejudiced Laclede. See Sumitomo Metal Indus. v. Babcock & Wilcox Co., 669 F.2d 703, 708-09 (CCPA 1982) ("[P]rejudice to existing parties to the litigation is 'perhaps the most important factor in determining timeliness of [an application] to intervene as of right.' ") (quoting Petrol Stops Northwest v. Continental Oil Co., 647 F.2d 1005, 1010 (9th Cir.1981)). Laclede asserts that the intervention resulted in the introduction of a new, collateral issue dealing with the duty determination for the "all others" rate. However, the record does not support this contention of prejudice. As recited in the motions, Union and Dongbu sought intervention for the "sole purpose ... to enjoin liquidation of its entries of the subject merchandise pending a final decision."
 
 
 17
 We do not believe Laclede has shown prejudice. The intervenors did not seek a change in any duty determination or raise any new issue to the court. For the intervenors to have the final decision of the court on the "all others" duty rate applied to their entries is not in itself prejudicial to Laclede. See Silver Reed America, Inc. v. United States, 600 F.Supp. 846, 851-52 (Ct. Int'l Trade 1984) ("Since [movant] does not seek intervention for the purpose of setting aside the results of this litigation or raising a new issue, this Court sees no prejudice to the present parties simply because injunctive relief would make [movant's] entries subject to liquidation in accordance with the final decision in this case.").
 
 
 18
 Accordingly, we discern no abuse of discretion by the Court of International Trade in permitting Union and Dongbu to intervene in the case before it even though it was granted late in the proceeding.