Slip Op. 26-16

# UNITED STATES COURT OF INTERNATIONAL TRADE

ZHAOYUAN JUNBANG TRADING CO., LTD., LINYI YUWANG VEGETABLE PROTEIN CO., LTD., SHANDONG YUWANG ECOLOGICAL FOOD INDUSTRY CO., LTD., AND FENCHEM BIOTEK LTD.,

    Plaintiffs,

and

NURA USA, LLC,

    Plaintiff-Intervenor,

v.

UNITED STATES,

    Defendant,

and

PURIS PROTEINS, LLC,

    Defendant-Intervenor.

Before: Jennifer Choe-Groves, Judge

Court No. 24-00180

## OPINION AND ORDER

[Sustaining the U.S. Department of Commerce's final determination and countervailing duty order in the 2022 countervailing duty investigation of pea protein from the People's Republic of China.]

Dated:  February 18, 2026

David J. Craven, Craven Trade Law LLC, of Chicago, IL, argued for Plaintiffs Zhaoyuan Junbang Trading Co. Ltd., Linyi Yuwang Vegetable Protein Co., Ltd., Shandong Yuwang Ecological Food Industry Co., Ltd., and Fenchem Biotek Ltd.

David J. Ross, Stephanie E. Hartmann, and Sydney J. Warren, Wilmer, Cutler, Pickering, Hale, and Dorr LLP, of Washington, D.C., for Plaintiff-Intervenor Nura USA, LLC.

Douglas G. Edelschick, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, D.C., argued for Defendant United States. With him on the brief were Yaakov M. Roth, Principal Deputy Assistant Attorney General, Patricia M. McCarthy, Director, and Franklin E. White, Jr., Assistant Director. Of counsel on the brief was Paul H. Thornton, III, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Adam H. Gordon, The Bristol Group PLLC, of Washington D.C., argued for Defendant-Intervenor Puris Proteins, LLC. With him on the brief were Benjamin J. Bay, and Scott D. McBride.

Choe-Groves, Judge: This action concerns the U.S. Department of Commerce's ("Commerce") final determination and countervailing duty order published in Certain Pea Protein From the People's Republic of China ("Final Determination"), 89 Fed. Reg. 55,557 (Dep't of Commerce July 5, 2024) (final affirmative countervailing duty determination and final affirmative critical circumstances determination) and accompanying Decision Memorandum for the Final Affirmative Determination in the Countervailing Duty Investigation of Certain Pea Protein from the People's Republic of China (June 27, 2024) ("Final

IDM"), PR 376.[1]  See Certain Pea Protein From the People's Republic of China, 89 Fed. Reg. 68,390 (Dep't of Commerce Aug. 26, 2024) (antidumping and countervailing duty orders).

Before the Court is the Rule 56.2 Motion for Judgment Upon the Agency Record filed by Plaintiffs Zhaoyuan Junbang Trading Co., Ltd. ("Junbang"), Linyi Yuwang Vegetable Protein Co., Ltd. ("Linyi Yuwang"), Shandong Yuwang Ecological Food Industry Co., Ltd. ("Shandong Yuwang"), and Fenchem Biotek Ltd. ("Fenchem Biotek") (collectively, "Plaintiffs").  Mot. J. Agency R., ECF No. 34; Mem. Law Supp. Pls.' R. 56.2 Mot. J. Agency R. ("Plaintiffs' Motion" or "Pls.' Br."), ECF No. 34-1.  Defendant United States ("Defendant") filed Defendant's Response to Plaintiffs' Rule 56.2 Motion for Judgment on the Agency Record.  Def.'s Resp. Pls.' R. 56.2 Mot. J. Agency R. ("Def.'s Resp. Br."), ECF Nos. 37, 38.  Defendant-Intervenor Puris Proteins, LLC ("Defendant-Intervenor") filed Defendant-Intervenor's Response Brief.  Def.-Interv.'s Resp. Br., ECF Nos. 50, 51.  Plaintiffs filed a Memorandum of Law in Support of Plaintiffs['] Reply to Response of United States and Defendant Intervenor to Plaintiff[]s['] Motion for Judgment Upon the Agency Record.  Mem. Law Supp. Pls.' Reply Resp. United States Def.-Interv. Pls.' Mot. J. Agency R. ("Pls.' Reply Br."), ECF Nos. 52, 53.

---

[1] Citations to the administrative record reflect the public record ("PR") and confidential record ("CR") numbers filed in this case, ECF Nos. 57, 58.

The Court held oral argument on December 8, 2025.  Oral Argument (Dec. 8, 2025), ECF No. 62.

For the reasons discussed below, the Court sustains Commerce's final determination.

## ISSUES PRESENTED

The Court reviews the following issues:

1.  Whether Plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek are parties to the proceeding and exhausted their administrative remedies;

2.  Whether Commerce's determination that Junbang benefited from the Export Buyer's Credit Program based on the application of an adverse inference resulting from the Government of China's failure to cooperate was supported by substantial evidence and in accordance with law; and

3.  Whether Plaintiffs waived Count III of the Complaint.

## BACKGROUND

In August 2023, Commerce initiated a countervailing duty investigation of pea protein from China.  Certain Pea Protein from the People's Republic of China, 88 Fed. Reg. 52,116 (Dep't of Commerce Aug. 7, 2023) (initiation of countervailing duty investigation).  Commerce selected Junbang and Yantai Oriental Protein Technology Co., Ltd. ("Yantai") as the mandatory respondents.  Decision Memorandum for the Preliminary Determination of the Countervailing

Duty Investigation on Certain Pea Protein from the People's Republic of China (Dec. 11, 2023) ("PDM") at 2, PR 303.

Commerce issued the Final IDM on June 27, 2024, and published its Final Determination July 5, 2024.  See generally, Final IDM; Final Determination, 89 Fed. Reg. 55,557.  Commerce continued to determine that the Government of China withheld information necessary for Commerce to verify non-use of the Export Buyer's Credit Program, which warranted the application of adverse facts available ("AFA").  Final IDM at 26–32.  Commerce maintained that the information provided by Junbang and Yantai was insufficient to fill the record gaps created by the Government of China's non-cooperation, and determined that Junbang and Yantai used and benefited from the Export Buyer's Credit Program. Id.

## JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction pursuant to Section 516A(a)(2)(B)(i) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(i), and 28 U.S.C. § 1581(c). The Court will hold unlawful any determination found to be unsupported by substantial evidence on the record or otherwise not in accordance with law.  19 U.S.C. § 1516a(b)(1)(B)(i).

## DISCUSSION

**I.     Standing and Exhaustion of Administrative Remedies by Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek**

The Court begins by addressing Defendant and Defendant-Intervenor's contention that only Junbang's arguments are argued properly before the Court because Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek failed to exhaust their administrative remedies by not filing administrative case briefs and should be precluded from raising their arguments here.  Def.'s Resp. Br. at 26–29; Def.-Interv.'s Resp. Br. at 27–30.  Defendant-Intervenor also argues that these three Plaintiffs were not proper parties to the proceeding under 19 U.S.C. § 1516a(a)(2)(A) and therefore lack standing to bring this challenge before the Court.  Def.-Interv.'s Br. at 27–29.  Plaintiffs do not address Defendant and Defendant-Intervenor's arguments.  See Pls.' Reply Br.

Pursuant to 19 U.S.C. § 1516a(a)(2)(A), "an interested party who is a party to the proceeding in connection with which the matter arises may commence an action in the United States Court of International Trade," to contest a final countervailing duty determination under § 1516a(a)(2)(B)(i).  19 U.S.C. § 1516a(a)(2)(A); see also id. § 1516a(a)(2)(B)(i).  The statute does not define "party to the proceeding."  This Court has noted that the "party to the proceeding" standing requirement is not onerous and participation in the administrative process "does not have to be extensive."  Gov't of Canada v. United States, 48 CIT __, __,

686 F. Supp. 3d 1320, 1327 (2024).  The United States Court of Appeals for the Federal Circuit ("CAFC") has held that to satisfy the "party to the proceeding" standing requirement, a party must reasonably convey the separate status of a party and the participation should be meaningful enough to give Commerce notice of a party's concerns."  Laclede Steel Co. v. United States, No. 96-1029, 1996 WL 384010, at *2 (Fed. Cir. July 8, 1996) (holding that foreign producers/proposed plaintiff-intervenors who were subject to the all-others rate participated actively in the administrative proceeding when they submitted factual data about their exports to assist Commerce in the selection of mandatory respondents); Gov't of Canada, 48 CIT at __, 686 F. Supp. 3d at 1328–29 (holding that proposed plaintiff-intervenors satisfied the "party to a proceeding" standing requirement when they submitted written requests for administrative review that indicated disagreement with the margin rate and provided factual information that Commerce used in selecting mandatory respondents).

The facts of this case are similar to those in Laclede Steel Co., where the CAFC held that the proposed plaintiff-intervenors "actively participated" in the administrative proceeding because they filed appearances and submitted factual data to help Commerce select mandatory respondents.  Laclede Steel Co., 1996 WL 384010, at *2.  The CAFC concluded that such participation provided Commerce with an awareness of the intervenors' interests in the investigation.  Id.

Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek filed appearances and responses to Commerce's initial quantity and value questionnaires.  See Resp. From Craven Trade Law LLC to SEC of Commerce Pertaining to LYVP Q&V Resp. (Aug. 15, 2023), CR 24; Resp. From Craven Trade Law LLC to SEC of Commerce Pertaining to SYEFO Q&V Resp. (Aug. 15, 2023), CR 25; Resp. from Craven Trade Law LLP to SEC of Commerce Pertaining to Fenchem Quantity and Value QR (Aug. 17, 2023), PR 84, CR 33.  This information was sufficient to convey separate status and put Commerce on notice of their interest in the investigation.  The Court concludes that Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek were parties to the proceeding within the meaning of the statutory term and now examines whether these three Plaintiffs exhausted their administrative remedies.

Pursuant to 28 U.S.C. § 2637(d), the court "shall, where appropriate, require the exhaustion of administrative remedies."  28 U.S.C. § 2637(d).  The court "generally takes a 'strict view' of the requirement that parties exhaust their administrative remedies."  Yangzhou Bestpak Gifts & Crafts Co. v. United States, 716 F.3d 1370, 1381 (Fed. Cir. 2013) (quoting Corus Staal BV v. United States, 502 F.3d 1370, 1379 (Fed. Cir. 2007)).  "[A]bsent a strong contrary reason, the court should insist that parties exhaust their remedies before the pertinent administrative agencies."  Boomerang Tube LLC v. United States, 856 F.3d 908,

912 (Fed. Cir. 2017) (citing Corus Staal BV, 502 F.3d at 1379).  Generally, exhaustion requires that a party submit an administrative case brief to Commerce presenting all arguments that continue to be relevant to Commerce's final determination or results.  Dorbest Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010); see 19 C.F.R. § 351.309(c)(2) ("[t]he case brief must present all arguments that continue in the submitter's view to be relevant to the . . . final determination or final results").  "If a party fails to put forth a relevant argument before Commerce in its case brief, then that argument is typically considered waived and will not be considered by a court on appeal."  DuPont Teijin Films China Ltd. v. United States, 38 CIT 1099, __, 7 F. Supp. 3d 1338, 1354 (2014).

There are limited exceptions to the exhaustion requirement: when "(1) plaintiff's argument involves a pure question of law; (2) there is a lack of timely access to the confidential record; (3) a judicial decision rendered subsequent to the administrative determination materially affected the issue; or (4) raising the issue at the administrative level would have been futile."  Ninestar Corp. v. United States, 48 CIT __, __, 687 F. Supp. 3d 1308, 1326 (2024) (quoting Gerber Food (Yunnan) Co. v. United States, 33 CIT 186, 193, 601 F. Supp. 2d 1370, 1377 (2009)).  The exhaustion requirement may also be waived "if the issue was raised by another party, or if it is clear that the agency had an opportunity to consider it." Holmes Prod. Corp. v. United States, 16 C.I.T. 1101, 1104 (1992); see also

Pakfood Pub. Co. v. Unites States, 34 C.I.T. 1122, 1145, 724 F. Supp. 2d 1327, 1351 (2010) (including issues fully considered by Commerce as a generally recognized exception to the exhaustion doctrine).

Although Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek did not file administrative case briefs, a limited exception to the exhaustion requirement applies because these three Plaintiffs now seek to raise the same issues that Plaintiff Junbang raised previously in its administrative case brief that were fully considered by Commerce. See Pls.' Br. at 3–4; Br. from Craven Trade Law LLC to SEC of Commerce Pertaining to Junbang Case Br. (Apr. 30, 2024) at 2–7, PR 362; IDM at 24–32. Incorporation by reference to another party's administrative argument is among the recognized exceptions to the exhaustion requirement. See Holmes Prod. Corp., 16 C.I.T. at 1104. The Court will permit Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek to proceed with their arguments.

## II.     Commerce's Determination that Junbang Benefited from the Export Buyer's Credit Program

### A.     Legal Standard

Pursuant to the Tariff Act, Commerce has the authority to conduct countervailing duty investigations and determine whether "the government of a country or any public entity within the territory of a country is providing, directly or indirectly, a countervailable subsidy with respect to the manufacture, production, or export of a class or kind of merchandise imported, or sold (or likely

to be sold) for importation, into the United States." 19 U.S.C. § 1671(a)(1). The CAFC has said that countervailing subsidies "exist when (1) a foreign government provides a financial contribution (2) to a specific industry and (3) a recipient within the industry receives a benefit as a result of that contribution." Fine Furniture (Shanghai) Ltd. v. United States ("Fine Furniture"), 748 F.3d 1365, 1369 (Fed. Cir. 2014) (citing 19 U.S.C. § 1677(5)(B)).

Section 776 of the Tariff Act states that if "necessary information is not available on the record," then the agency shall "use the facts otherwise available in reaching" its determination. 19 U.S.C. § 1677e(a)(1). 19 U.S.C. § 1677e(a)(2) permits Commerce to select from facts otherwise available if an interested party: (A) withholds information; (B) fails to provide such information by the deadlines for submission, or in the form and manner requested; (C) significantly impedes a proceeding; or (D) provides such information but the information cannot be verified. 19 U.S.C. § 1677e(a)(2).

Commerce's authority to use facts otherwise available under 19 U.S.C. § 1677e(a) is subject to 19 U.S.C. § 1677m(d), which states that:

> If the administering authority or the Commission determines that a response to a request for information under this subtitle does not comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d).

If Commerce determines that "an interested party has failed to cooperate by not acting to the best of its ability to comply with a request for information" from the agency, then Commerce "may use an inference that is adverse to the interests of that party in selecting from among the facts otherwise available." Id. § 1677e(b)(1)(A). The CAFC has interpreted these two subsections to have different purposes. See Mueller Comercial de Mexico, S. de R.L. De C.V. v. United States, 753 F.3d 1227, 1232 (Fed. Cir. 2014). Subsection (a) applies "whether or not any party has failed to cooperate fully with the agency in its inquiry." Id. (citing Zhejiang DunAn Hetian Metal Co. v. United States, 652 F.3d 1333, 1346 (Fed. Cir. 2011)). Subsection (b) applies only when Commerce makes a separate determination that the respondent failed to cooperate "by not acting to the best of its ability." Id. (quoting Zhejiang DunAn Hetian Metal Co., 652 F.3d at 1346).

When determining whether a respondent has complied to the "best of its ability," Commerce "assess[es] whether [a] respondent has put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon Steel v. United States, 337 F.3d 1373, 1382 (Fed. Cir. 2003). This determination requires both an objective and subjective showing. Id. Commerce must determine objectively "that a reasonable and responsible

[respondent] would have known that the requested information was required to be kept and maintained under the applicable statutes, rules, and regulations." Id. (citing Ta Chen Stainless Steel Pipe, Inc. v. United States, 298 F.3d 1330, 1336 (Fed. Cir. 2002)). Next, Commerce must demonstrate subjectively that the respondent's "failure to fully respond is the result of the respondent's lack of cooperation in either: (a) failing to keep and maintain all required records, or (b) failing to put forth its maximum efforts to investigate and obtain the requested information from its records." Id. at 1382–83. Adverse inferences are not warranted "merely from a failure to respond," but rather in instances when Commerce reasonably expected that "more forthcoming responses should have been made." Id. at 1383. "The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." Id.

"Typically, foreign governments are in the best position to provide information regarding the administration of their alleged subsidy programs . . .[and] respondent companies, on the other hand, will have information pertaining to the existence and amount of the benefit conferred on them by the program." Essar Steel Ltd. v. United States, 34 CIT 1057, __, 721 F.Supp.2d 1285, 1297 (2010), aff'd in part and rev'd in part on other grounds, 678 F.3d 1268 (Fed. Cir. 2012). When a foreign government fails to cooperate to the best of its

ability, Commerce's application of AFA to the non-cooperating government's interests may collaterally affect a cooperating respondent company. See Fine Furniture, 748 F.3d at 1373 ("Although it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent.").

### B. Commerce's Use of Facts Otherwise Available

#### 1. Commerce's Determination Pursuant to 19 U.S.C. § 1677(e)(a)(2)

Plaintiffs argue that Commerce's determination was unlawful and unsupported by record evidence because there was no gap in the record and Junbang cooperated fully by providing the information in its possession, including evidence of non-use by its customers. Pls.' Br. at 8–9. Defendant and Defendant-Intervenor respond that Plaintiffs' arguments are misplaced because Commerce never determined that Junbang failed to cooperate. Def.'s Resp. Br. at 14; Def.-Interv.'s Resp. Br. at 16–17. Defendant and Defendant-Intervenor aver that the information that Commerce needed to verify claims of non-use of the Export Buyer's Credit Program was in the sole possession of the Government of China, and information provided by Junbang was insufficient to verify non-use of the Export-Buyer's Credit Program. Def.'s Resp. Br. at 14–19; Def.-Interv.'s Resp.

Br. at 16–17. Defendant and Defendant-Intervenor argue that Commerce's determination to use facts otherwise available was in accordance with law and supported by substantial evidence. Def.'s Resp. Br. at 14–19; Def.-Interv.'s Resp. Br. at 16–20.

Pursuant to 19 U.S.C. § 1677e(a)(2), Commerce may use facts otherwise available if an interested party: (A) withholds information; (B) fails to provide such information by the deadlines for submission, or in the form and manner requested; (C) significantly impedes a proceeding; or (D) provides such information but the information cannot be verified. 19 U.S.C. § 1677e(a)(2).

In the Final IDM, Commerce explained that the Government of China's questionnaire responses led Commerce to determine that the use of facts otherwise available was appropriate under 19 U.S.C. §§ 1677(e)(a)(2)(A)–(C). Final IDM at 32.

Commerce stated that during the investigation, the Government of China withheld information by refusing to provide the twice-requested 2013 Revisions to the Administrative Measures of the China Export-Import Bank ("2013 Revised Administrative Measures"), and a list of partner/correspondent banks that are used to disburse funds for the Export Buyer's Credit Program. Id. at 26–28. Commerce explained that the Government of China also failed to provide the information in the form and manner requested because it provided a copy of the 2000

Administrative Measures rather than the 2013 Revised Administrative Measures, and provided screenshots of the Export-Import Bank of China's ("Export-Import Bank") database rather than a list of partner/correspondent banks. Id. at 28.

Commerce's determination that information was withheld or provided in the wrong form pursuant to 19 U.S.C. §§ 1677e(a)(2)(A)–(B) was accompanied by citations to the answers and exhibits provided by the Government of China in response to the initial and supplemental questionnaires that Commerce issued. Id. at 27 n.135–36 (citing Resp. From Clark Hill PLC to SEC of Commerce Pertaining to GOC SEC II QR – Narrative (Oct. 18, 2023) ("Gov't of China Initial Quest. Resp.") at 70–75, PR 165; Resp. from Clark Hill PLC to SEC of Commerce Pertaining to GOC SEC II Suppl. QR – Part 1 (Nov. 20, 2023) ("Gov't of China Supp. Quest. Resp.") at 41–44, PR 265); id. at 28 n.139 (citing Gov't of China Initial Quest. Resp. at Ex. II.B.7, CR 112); id. at 28 n.144 (citing Letter From USDOC to Clark Hill Pertaining to GOC SEC II Supp. QR (Nov. 3, 2023) (Gov't of China Supp. Quest.") at 11, PR 238); id. at 28 n.146 (citing Gov't of China Initial Quest. Resp. at Ex. II.B.10, CR 113).

These record documents indicate that in Commerce's initial questionnaire to the Government of China, Commerce requested that the Government of China provide a copy of the 2013 Revised Administrative Measures, a list of partner/correspondent banks, and other information regarding the Export Buyer's

Credit Program, such as laws, regulations, or governing documents.  Gov't of China Initial Quest. Resp. at 70–73.  In response, the Government of China stated that to the best of its knowledge, "neither the respondents nor the respondents' U.S. customers applied for, used, or benefited" from the Export-Buyer's Credit Program during the period of investigation, and the questions were "not applicable."  Id.  Instead of providing the 2013 Revised Administrative measures or a list of partner/correspondent banks, the Government of China provided a copy of the 2000 Administrative Measures, and screenshots from the Export-Import Bank's credit management system.  Id. at 70–74; Exs. II.B.7, II.B.10.

Commerce issued a supplemental questionnaire, reiterating its request for the 2013 Revised Administrative Measures.  Gov't of China Supp. Quest. at 11.  The Government of China continued to withhold the 2013 Revised Administrative Measures, stating that this document was "internal to the bank, non-public, and not available for release," and it did "not believe that the requested information [was] necessary to render a determination on this investigation."  Gov't of China Supp. Quest. Resp. at 41–43.  The Government of China also declined to provide a list of partner and correspondent banks involved in the disbursements of Export Buyer's Credit Program's funds, stating that "a list of partner/correspondent bank[s] is not necessary to either confirm or verify usage of this program," and the screenshots

provided previously "confirmed that none of the reported customers used this program." Id. at 44.

In the Final IDM, Commerce determined that the Government of China's failure to provide the requested information impeded Commerce's ability to analyze the Export Buyer's Credit Program and hindered Commerce's ability to verify non-use assertions. Final IDM at 26–29. Commerce explained that a prior countervailing duty proceeding revealed that the 2013 Revised Administrative Measures permit the Export-Import Bank to disburse funds directly or through a third-party partner/correspondent bank. Id. at 28 (citing Countervailing Duty Investigation of Certain Amorphous Silica Fabric from the People's Republic of China ("Silica Fabric Investigation"), 82 Fed. Reg. 8405 (Dep't of Commerce Jan. 25, 2017) (final affirmative determination)). Commerce stated that under the 2000 Administrative Measures, the Export-Import Bank had limited the provision of export buyer's credits to business contracts exceeding two million U.S. dollars. Id. Commerce averred that the Government of China's responses from the Silica Fabric Investigation indicated that the 2013 Revised Administrative Measures eliminated this threshold. Id. (citing Gov't of China Initial Quest. Resp. at Ex. II.B.8, CR 113 (Government of China's 7th Supplemental Response in the Silica Fabric Investigation)). Referencing its determinations from the PDM, Commerce explained that the threshold is important because it limits the universe of potential

loans under the Export Buyer's Credit Program and assists Commerce in targeting its verification of non-use. Final IDM at 26–29; see PDM at 32 (citing Clearon Corp. v. United States, 44 CIT __, __, 474 F. Supp. 3d 1339, 1347 (2020) (quoting the final results of a remand redetermination)). Commerce stated that without the missing information, it lacked an understanding of the Export Buyer's Credit Program's scope, and the continued withholding would increase Commerce's difficulty in understanding the program's parameters and conducting accurate verifications. Final IDM at 26–29.

Commerce stated that the 2013 Revised Administrative Measures provide a roadmap to effective verification and "without a complete set of laws, regulations, application and approval documents, and administrative measures, Commerce would not even know what books and records the China [Export-Import] Bank maintains in the ordinary course of its operations" because knowledge of what records, databases, or supporting documentation require examination would allow Commerce to "effectively conduct the verifications." Id. at 27 (quoting Wood Mouldings and Millwork Products from the People's Republic of China, 86 Fed. Reg. 67 (Dep't of Commerce Jan. 4, 2021) (final affirmative countervailing duty determination Millworks) and accompanying Issues and Decision Memorandum ("Millworks IDM") at Comment 2). Without such guidance, verification of each

customer's loans would be "unreasonably onerous" and unlikely to produce accurate results. Id.

Regarding the list of partner/correspondent banks, Commerce explained that conducting customer verifications without the requested information "would amount to looking for a needle in a haystack with the added uncertainty that Commerce might not even be able to identify the needle when it was found." Id. at 27 (quoting Millworks IDM at Comment 2). Commerce attributed this uncertainty to its inability to differentiate ordinary commercial lending from disbursements provided under the Export Buyer's Credit Program. Id. at 29.

Although the Government of China requested that Commerce review screenshots of the Export-Import Bank database, Commerce determined that the screenshots were unverifiable and insufficient to provide an understanding of the Export Buyer's Credit Program. Id. at 28–29. Commerce explained that it could not determine whether a query from the Export-Import Bank encompassed all participating businesses in the Export Buyer's Credit Program, nor could Commerce assume that the system operated consistently regardless of whether the Export-Import Bank or an intermediary bank was involved. Id. The Court agrees with Commerce's determination that screenshots of the Export-Import Bank's system are not an adequate substitute for the missing information identified by Commerce with regard to its requests for the 2013 Revisions and the list of

partner/correspondent banks.  See RZBC Grp. Shareholding Co. v. United States,

Slip Op. 16-64, 2016 WL 3880773, at *4 (CIT June 30, 2016) (holding that

screenshots of the Export-Import Bank "are incommensurate with database access"

and not "a suitable substitute" because "a picture is something that can be

fabricated").

Based on the explanations in the Final IDM and an examination of the

record evidence cited by Commerce, the Court disagrees with Plaintiffs' assertion

that there was no gap in the record or that Junbang's cooperation should have been

a factor in Commerce's determination to use facts otherwise available.  See Pls.'

Br. at 8–9.  The record evidence relied upon by Commerce supports its

determination that the Government of China withheld information that Commerce

required to understand the Export Buyer's Credit Program and conduct

verifications of non-use, and Commerce reasonably understood from the

Government of China's questionnaire responses that this information was in the

sole possession of the Government of China.  See e.g., Gov't of China Supp.

Quest. Resp. at 42 (stating that the 2013 Revised Administrative Measures were

"internal to the bank, non-public, and not available for release").

Commerce explained that it examined the record to consider whether

information provided by Junbang and Yantai could fill the gap of missing

information created by the Government of China.  Final IDM at 30.  Commerce

clarified that the information provided by Junbang and Yantai, such as customer certifications of non-use, was not the information it required to make a determination regarding the Export Buyer's Credit Program, and explained that Commerce considered customer certifications of non-use to function as an alternative path offered by respondents in instances when the Government of China refuses to cooperate and the respondents can provide a full set of customer non-use certifications. Id. at 29–30. Commerce explained that when a respondent voluntarily provides a complete set of customer non-use certifications, it may be possible for Commerce to verify non-use of the Export Buyer's Credit Program by undertaking additional steps and communications with that party. Id. Commerce determined that Junbang's information was insufficient to fill the gap in the record because Junbang did not provide certifications of non-use from all of its customers. Id. at 30 (citing Resp. From Craven Trade Law LLC to SEC of Commerce Pertaining to Junbang SEC III QR – Cover Letter and JB Narrative (Oct. 18, 2023) ("Junbang Initial Quest. Resp.") at Exs. 13–14, CR 73). The exhibits from Junbang's initial questionnaire response that Commerce cited are a list of Junbang's customers and a set of non-use certifications from approximately one-fourth of Junbang's customers. Junbang Initial Quest. Resp. at Exs. 13–14. During oral argument, the Parties agreed that Junbang placed additional non-use certifications on the record voluntarily, and the total number of customers that

provided non-use certifications was approximately one-third.  Oral Argument

Trans. at 42:27–43:04; 61:26–62:20; <u>see</u> <u>also</u> Junbang Initial Quest. Resp. at Ex.

16, CR 76; Resp. From Craven Trade Law LLC to SEC of Commerce Pertaining to

Junbang Suppl. QR (Nov. 27, 2023) ("Junbang Suppl. Quest. Resp.") at Ex. SQ-5,

CR 177.

While Junbang's information was determined to be insufficient to fill the

record gaps and verify non-use of the Export Buyer's Credit Program, Commerce

reached that determination after first concluding that the use of facts otherwise

available was warranted based on the Government of China's conduct.  Commerce

did not attribute its decision to use facts otherwise available to Junbang.  There is

no indication from the Final IDM that Commerce determined separately that

Junbang possessed necessary information, withheld information, failed to provide

information in a timely manner or in the form requested, impeded the investigation

significantly, or provided information that could not be verified such that the

application of facts otherwise available was warranted due to Junbang's conduct.

The Court is satisfied that Commerce articulated the proper legal basis for its

decision to use facts otherwise available based on the Government of China's

actions, and Commerce supplied reasonable explanations with appropriate citations

to the record evidence.  Accordingly, the Court concludes that Commerce's

decision to rely on facts otherwise available is in accordance with 19 U.S.C.

§ 1677(e)(a)(2) and supported by substantial evidence.

## 2.      Notice and Opportunity to Remedy or Explain a Deficiency

Plaintiffs aver that Commerce failed to meet its obligations under 19 U.S.C.

§ 1677(m)(d) when Commerce neither provided Junbang with notice of a

deficiency in Junbang's reported data and customer certifications, nor provided

Junbang with an opportunity to remedy its responses.  Pls.' Br. at 11–15.

Defendant and Defendant-Intervenor respond that the application of facts

otherwise available was based on a determination that the Government of China,

not Junbang, withheld information, and Commerce was not required to provide

Plaintiffs with an opportunity to remedy the deficient responses submitted by the

Government of China.  Def.'s Resp. Br. at 23–26; Def.-Interv.'s Resp. Br. at 23–

26.

Commerce's authority under 19 U.S.C. § 1677e(a) to use facts otherwise

available is subject to a statutory obligation under 19 U.S.C. § 1677m(d) that

requires Commerce to notify a respondent promptly of the nature of a deficiency in

the record and to provide the respondent with an opportunity to remedy or explain

the deficiency.  19 U.S.C. § 1677e(a); 19 U.S.C. § 1677m(d).

19 U.S.C. § 1677m(d) states in relevant part:

> If the administering authority or the Commission determines that a
> response to a request for information under this subtitle does not

comply with the request, the administering authority or the Commission (as the case may be) shall promptly inform the person submitting the response of the nature of the deficiency and shall, to the extent practicable, provide that person with an opportunity to remedy or explain the deficiency in light of the time limits established for the completion of investigations or reviews under this subtitle.

19 U.S.C. § 1677m(d).

19 U.S.C. § 1677(m)(d) does not require Commerce to provide an opportunity to remedy a deficiency to any party other than the party that submitted the deficient response. The statute is clear that when Commerce identifies a deficiency in a party's response, Commerce is required to "promptly inform *the person submitting the response* of the nature of the deficiency and . . . provide *that person* with an opportunity to remedy or explain the deficiency[.]" Id. (emphasis added). With regard to the information withheld by the Government of China, the plain language of § 1677(m)(d) requires Commerce to provide only the Government of China with an opportunity to remedy or explain the deficiencies that created a gap in the record. See id. In accordance with that statutory obligation, Commerce provided the Government of China with such an opportunity, and relied on facts otherwise available only after the Government of China continued to withhold the requested information. Final IDM at 28 n.144 (citing Gov't of China Supp. Quest. at 11), 29; see also Gov't of China Supp. Quest. at 11. The statute did not require Commerce to provide other interested

parties with the opportunity to provide supplemental information based on the Government of China's non-cooperation.

Junbang contends that it submitted "substantial evidence of non-use" that was ignored by Commerce, but admits that it did not provide certifications of non-use of the Export Buyer's Credit Program for all of its customers and argues that Commerce should have regarded this as a deficiency. Pls.' Br. at 9, 13–15. The Final IDM and the record clarify the role of the customer certifications in Commerce's investigations.

Commerce stated that it considered the available record information to determine whether it could fill the gap of missing information from the Government of China and verify each party's non-use. Final IDM at 30–31. Commerce explained that it will accept and consider customer certifications of non-use when a respondent voluntarily submits a complete set of customer certifications of non-use. Id. at 29. A complete set of customer certifications of non-use indicates cooperation and Commerce may then issue supplemental questions or conduct verification to confirm non-use of the Export Buyer's Credit Program. Id. at 30. Commerce determined that Junbang provided certifications of non-use for some, but not all, of its customers in the United States, which indicated to Commerce that most of Junbang's customers would be unwilling to cooperate

with requests for information from Commerce. Id. at 30 (citing Junbang Initial Quest. Resp. at Exs. 13–14).

Exhibit 13 of Junbang's initial questionnaire response provided a list of customers, while Exhibit 14 provided certifications of non-use from approximately one-fourth of those customers. Junbang Initial Quest. Resp. at Exs. 13–14. During oral argument, the Parties agreed that the Junbang provided certifications of non-use from approximately one-third of its customers, because Commerce overlooked a certification of non-use from a customer of Junbang's cross-owned company, Yantai Shuangta Food Co., Ltd., and two additional certifications of non-use that Junbang attached voluntarily to a supplemental questionnaire despite the supplemental questionnaire lacking any questions regarding the Export Buyer's Credit Program. Oral Argument Trans. at 42:27–43:04; 61:26–62:20; see also Junbang Initial Quest. Resp. at Ex. 16; Junbang Suppl. Quest. Resp. at Ex. SQ-5. In the Final IDM, Commerce explained that it had an "insufficient basis" to further investigate Junbang's non-use claims because it was "impossible, and contrary to Commerce's practice, to confirm non-use based on partial non-use information." Final IDM at 30.

Responding to Junbang's arguments from its administrative brief, Commerce clarified that it was not required under § 1677(m)(d) to provide Junbang with an opportunity to correct its incomplete customer certifications

because the certifications were only "alternative paths proposed by respondents to remediate the deficiencies in the record resulting from the [Government of China's] refusal to fully cooperate," rather than the sole basis of the determination to apply AFA.  Id.

The Court concludes that Commerce was not obligated under 19 U.S.C. § 1677(m)(d) to provide Junbang with an opportunity to gather more customer non-use certifications, even assuming that Junbang could obtain such non-use certifications from more than one-third of its customers.  Commerce never determined that Junbang's responses were deficient and that the use of facts otherwise available was warranted based on Junbang's conduct, because Commerce reasonably understood Junbang to have provided a complete response to Commerce's question regarding the Export Buyer's Credit Program, and the incomplete set of certifications of non-use submitted by Junbang's customers indicated to Commerce that the remaining customers were not willing to certify their non-use of the Program.

Accordingly, the Court concludes that Commerce's determination that it did not have an obligation to Plaintiffs under § 1677(m)(d) to request supplemental customer certifications of non-use was in accordance with law and supported by substantial evidence.

### C.    Application of an Adverse Inference

Plaintiffs argue that Commerce's application of AFA was inappropriate because there is no record evidence that Plaintiffs failed to cooperate or provide information in their possession. Pls.' Br. at 8–9. Plaintiffs aver that there was "substantial evidence of non-use" of the Export Buyer's Credit Program provided by Junbang's customers that Commerce "ignored," and there was no basis for an adverse inference. Id. 8–10. Defendant and Defendant-Intervenor argue that Commerce never determined that Junbang failed to cooperate to the best of its ability, only the Government of China, and the record evidence submitted by Junbang was considered but determined to be insufficient to warrant Commerce fully examining Junbang's claims of non-use. Def.'s Resp. Br. at 14, 19–23; Def.-Interv.'s Resp. Br. at 16–23.

The Final IDM contains no indication that Commerce determined that Junbang failed to cooperate to the best of its ability such that an adverse inference was appropriate. See generally, Final IDM. Commerce determined only that the Government of China failed to cooperate to the best of its ability by withholding materials within its control. See id. 24–32. Plaintiffs' briefs did not challenge Commerce's continued determination that the Government of China failed to cooperate. See generally, Pls.' Br.; Pls.' Reply Br.

Plaintiffs' remaining argument that Commerce failed to consider the "substantial evidence" of non-use that Plaintiffs submitted before applying an adverse inference is contradicted by the record evidence cited by Commerce. See Pls.' Br. at 9–10. Plaintiffs Linyi Yuwang, Shandong Yuwang, and Fenchem Biotek did not submit any information evidencing non-use of the Export Buyer's Credit Program from their customers in the United States. Commerce did not depart from its established approach for determining whether information on the record could fill the gaps created by the Government of China's non-cooperation. Final IDM at 29–31. Commerce determined that the partial information provided by Junbang did not provide Commerce "with a path towards further investigating, completely verifying (if Commerce exercised its discretion to do so), or otherwise ultimately determining the non-use of this program by the respondents." Id. at 31. Commerce cited Junbang's inability to provide certifications of non-use from all of Junbang's customers as the reason for Commerce's determination that it could not move forward with confirming non-use of the Export Buyer's Credit Program. Id. at 30 (citing Junbang Initial Quest. Resp. at Exs. 13–14). As the Court found earlier, Junbang provided certifications of non-use from only one-third of its customers. Junbang Initial Quest. Resp. at Exs. 13–14; see also Oral Argument Trans. at 42:27–43:04; 61:26–62:20; Junbang Initial Quest. Resp. at Ex. 16; Junbang Suppl. Quest. Resp. at Ex. SQ-5. Commerce continued to determine that

the use of AFA was warranted based on the Government of China's failure to cooperate and, because it was unable to verify any claims of non-use, it determined that Junbang used and benefited from the Export Buyer's Credit Program.  Final IDM at 31–32.  The Court concludes that Commerce did not fail to consider the evidence placed on the record by Junbang, nor did it overlook evidence that would have removed the collateral impact of Commerce's adverse inference with regard to the Government of China.

Plaintiff's argument is similar to one rejected previously by the CAFC in Fine Furniture.  In Fine Furniture, the plaintiff argued that "Commerce's inferences were not adverse to the government of China, but only to Fine Furniture because Fine Furniture was the only party who was actually impacted by the inferences." Fine Furniture, 748 F.3d at 1371.  The plaintiff argued that "the application of an adverse inference against Fine Furniture is improper" absent a finding that Fine Furniture was also non-cooperative.  Id.  The CAFC held that "[a]lthough it is unfortunate that cooperating respondents may be subject to collateral effects due to the adverse inferences applied when a government fails to respond to Commerce's questions, this result is not contrary to the statute or its purposes, nor is it inconsistent with this court's precedent."  Id. at 1373; see also KYD, Inc. v. United States, 607 F.3d 760, 768 (Fed. Cir. 2010) (holding that the application of an

adverse inference in a countervailing duty investigation is not unlawful when it impacts a cooperating party collaterally).

Having considered the applicable legal standards and record evidence, the Court concludes that Commerce's determination that Junbang benefited from the Export Buyer's Credit Program was in accordance with law and supported by substantial evidence. Accordingly, the Court sustains Commerce's determination on this issue.

### D.      The Adverse Rate for the Export Buyer's Credit Program

Plaintiffs argue that, to the extent that Commerce applied facts available correctly, Commerce should not have applied the highest rate and should have adjusted the rate downward to account for the entities that established non-use. Pls.' Br. 8–11. Defendant did not respond directly to Plaintiffs' arguments regarding the applied AFA rate. See Def.'s Resp. Br. Defendant-Intervenor argues that the rate applied to the Export Buyer's Credit Program was calculated in accordance with Commerce's statutory countervailing duty AFA hierarchy. Def.-Interv.'s Resp. Br. at 26–27. Defendant-Intervenor avers that a respondent's submission of non-use certifications does not establish non-use of the Export Buyer's Credit Program until Commerce conducts additional verification and determines that the provided information is sufficient to fill the gap in the record and certify a party's non-use. Id. at 26. Defendant-Intervenor asserts that Junbang

did not provide non-use certifications for all or most of its customers, and there is

no legal basis that requires Commerce to depart from its statutory hierarchy and

adjust its countervailing duty rate to account for incomplete customer non-use

certifications. Id. at 26–27.

When selecting an AFA rate in a countervailing duty proceeding, Commerce

may:

> (i) use a countervailable subsidy rate applied for the same or similar
> program in a countervailing duty proceeding involving the same
> country; or
> (ii) if there is no same or similar program, use a countervailable subsidy
> rate for a subsidy program from a proceeding that the administering
> authority considers reasonable to use.

19 U.S.C. § 1677e(d)(1)(A). The statute affords Commerce discretion in its

calculations, and Commerce has developed a methodology to determine the

appropriate AFA rate in countervailing duty investigations. See 19 C.F.R.

§ 351.308(j)(1). First, Commerce applies the highest non-zero rate calculated for a

cooperating company for an identical program used in the same proceeding. 19

C.F.R. § 351.308(j)(1)(i). If no other cooperating company in the investigation

used an identical program, Commerce applies the highest non-de minimis rate

calculated for an identical program in a different countervailing duty proceeding

involving the same country. Id. at § 351.308(j)(1)(ii). If such a rate does not exist,

Commerce uses the highest non-de minimis rate calculated for a similar program in

any countervailing duty proceeding involving the same country. Id. at

§ 351.308(j)(1)(iii). If such a rate does not exist, Commerce uses the highest rate calculated for any non-company specific program in a countervailing duty proceeding involving the same country that the company's industry could have used. Id. at § 351.308(j)(1)(iv).

19 U.S.C. § 1677e(d)(2) confers Commerce with discretion to apply the highest rate when selecting among facts otherwise available and making an adverse inference. The statute allows Commerce to select the highest rate "based on the evaluation by the administering authority" of the circumstances that led to the application of AFA. Id.

Commerce applied an AFA rate of 10.54 percent *ad valorem*, and explained its methodology and the statutory guidelines that led it to determine the applicable rate. Final IDM at 32.

During oral argument, Plaintiffs agreed with Defendant's arguments regarding the sufficiency of Commerce's rate determination analysis. Oral Argument Trans. at 44:00–49:00. Plaintiffs' arguments focused instead on whether Commerce should have also considered Junbang's partial customer certifications of non-use and then lowered the AFA rate. Id. at 49:20–50:42.

Plaintiffs do not cite to any statutory or regulatory basis that would require Commerce to deviate from its statutory methodology and reduce the AFA rate to account for the partial certifications of non-use submitted by Junbang's customers.

See Pls.' Br. at 9–11 (citing Risen Energy Co. v. United States ("Risen III"), 47 CIT __, 665 F. Supp. 3d 1335 (2023) and Dalian Meisen Woodworking Co. v. United States ("Dalian Meisen"), 48 CIT __, 719 F. Supp. 3d 1322 (2024)).  The cases cited by Plaintiffs are also distinguishable from the instant case.

In Risen III and Dalian Meisen, the plaintiffs provided evidence of non-use for all customers during the initial investigation, and both decisions focused on how Commerce utilized and verified such evidence based on all relevant customers.  Risen III, 47 CIT at __, 665 F. Supp. 3d at 1340–44; Dalian Meisen, 48 CIT at __, 719 F. Supp. 3d at 1326–29, 1332–33, 1335–37.  By contrast, Plaintiffs never cleared the initial threshold that would warrant Commerce undertaking further attempts at verification because Commerce determined that Junbang provided an incomplete set of customer non-use certifications and Commerce had an insufficient basis to take further steps towards verification of non-use of the Export Buyer's Credit Program.  See Final IDM at 29–32 (citing Junbang Initial Quest. Resp. at Exs. 13–14).  As the Court found earlier, the record evidence confirms that Junbang provided non-use certifications from only one-third of its customers.  Junbang Initial Quest. Resp. at Exs. 13–14; see also Oral Argument Trans. at 42:27–43:04; 61:26–62:20; Junbang Initial Quest. Resp. at Ex. 16; Junbang Suppl. Quest. Resp. at Ex. SQ-5.  Because Plaintiffs did not provide the requisite amount of evidence of non-use that would have warranted Commerce

moving forward to verify non-use, there was no entity that established non-use of the Export Buyer's Credit Program, and Commerce did not err in assigning an AFA rate by relying on its statutory methodology.

Because Plaintiffs have not challenged Commerce's AFA rate by articulating any basis upon which the Court could conclude that Commerce's selection of the highest rate was unlawful, the Court sustains Commerce's AFA rate determination as in accordance with law and supported by substantial evidence.

## III.    Waiver of Count III

Defendant and Defendant-Intervenor argue that Plaintiffs waived Count III of the Complaint by failing to address the issue in their briefing or develop any argument.  Def.'s Resp. Br. at 26; Def.-Interv.'s Resp. Br. at 27.

"It is well-established that arguments that are not appropriately developed in a party's briefing may be deemed waived."  United States v. Great Am. Ins. Co. of N.Y., 738 F.3d 1320, 1328 (Fed. Cir. 2013); see also JBF RAK LLC v. United States, 38 CIT 1006, __, 991 F. Supp. 2d 1343, 1356 (2014), aff'd, 790 F.3d 1358 (Fed. Cir. 2015).

Count III of Plaintiffs' Complaint alleges that Commerce used the wrong denominator for certain program calculations by selecting benefits from one time period and selecting sales from a different time period.  Compl. at ¶¶ 27–29, ECF

No. 13.  Plaintiffs' briefs neither set forth any substantive arguments regarding this issue for the Court to weigh, nor include any mention of this issue.  See Pls.' Br; Pls.' Reply Br.  Plaintiffs also fail to address Defendant's and Defendant-Intervenor's contention that the claim should be deemed waived.  See Pls.' Reply Br.  The Court concludes that Count III of Plaintiffs' Complaint is waived.

## CONCLUSION

For the reasons set forth above, the Court sustains Commerce's Final Determination.  Accordingly, it is hereby

**ORDERED** that Plaintiffs' Rule 56.2 Motion for Judgment Upon the Agency Record, ECF No. 34, is denied.

Judgment will be issued accordingly.

/s/ Jennifer Choe-Groves
Jennifer Choe-Groves, Judge

Dated:      February 18, 2026
                New York, New York